27 P.3d 681 (2001)
Craig CHELIUS, a married person, and H. Adam Feuer, a single person, Respondents,
v.
QUESTAR MICROSYSTEMS, INC., a Washington Corporation, Kevin Helenius and Jane Doe Helenius, husband and wife and the marital community composed thereof, and H. Alan Tilley and Jane Doe Tilley, husband and wife and the marital community composed thereof, Appellants.
No. 46754-9-I.
Court of Appeals of Washington, Division 1.
July 30, 2001.
Gary K. Marshall, Seattle, for Respondents.
Larry E. Halvorson, Halvorson & Saunders Pllc, Seattle, for Appellants.
*682 BAKER, J.
Questar Microsystems and its owners appeal a judgment awarding Craig Chelius and Adam Feuer unpaid wages, double damages, and attorney fees under RCW 49.52.050 and.070. Because no bona fide dispute existed about the defendants' obligation to pay and substantial evidence supports the trial court's findings that the employees did not knowingly submit to the nonpayment of their wages, we affirm.

I
Alan Tilley and Kevin Helenius were equal partners in Questar Microsystems, Inc., a well-established company that was shifting its focus from the design and manufacture of industrial control systems to the development of an internet software product. They hired Craig Chelius to head the marketing department of this new venture. Upon his hire, Chelius agreed to defer payment of his wages for three months. Tilley and Helenius also retained Adam Feuer as an outside consultant. They eventually hired him to join their management team as a program manager. At the time he was hired as an employee, Questar owed Feuer $13,718 in consulting fees.
Despite their positions in senior management, Chelius and Feuer possessed neither check signing authority nor the power to hire or fire employees. They also had no access to the company's financial statements. During their employment, Questar paid them only sporadically. Chelius and Feuer stayed with the company as long as they did because they hoped the company would become successful, and that their stock options could bring them wealth.
At the end of two years, however, Questar was burdened by a heavy debt load. When Feuer finally left the company, he was owed back wages of $34,218.75 as well as unpaid Social Security and Medicare taxes and consulting fees of $8,567. Soon thereafter, Tilley and Helenius terminated Chelius' employment. He was owed back wages of $133,000, Medicare and Social Security taxes, and $4,921.86 in unreimbursed business expenses. Questar eventually shut down its operations and transferred its principal assets to other companies.
Chelius and Feuer sued Questar and Tilley and Helenius individually for back wages, exemplary damages, and attorney fees under RCW 49.52.050 and 070. The trial court entered judgment in favor of the employees. Questar, Tilley, and Helenius appeal.

II
Helenius and Tilley do not dispute that they are individually liable as principals of Questar for the back wages owed to Chelius and Feuer. They also have no quarrel with the amounts claimed by the employees. Instead, they argue that substantial evidence does not support the trial court's findings that Chelius and Feuer did not "knowingly submit" to the nonpayment of their wages. Consequently, they contend that they should not be held liable for exemplary damages and attorney fees under RCW 49.52.070.
Our review of a trial court's findings of fact is limited to whether substantial evidence exists to support them.[1] Substantial evidence is a sufficient quantum of evidence to persuade a fair-minded person of the truth of the declared premise.[2] RCW 49.52.070 provides in relevant part:
Any employer and any officer, vice principal or agent of any employer who shall ... [unlawfully withhold wages under] RCW 49.52.050 shall be liable in a civil action ... for twice the amount of the wages unlawfully... withheld ... together with costs of suit and a reasonable sum for attorney's fees: Provided, however, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.
In this case, Questar never paid Chelius and Feuer their full wages. Thus, to have "knowingly submitted" to the unlawful withholding of wages, the employees must have deliberately and intentionally deferred to Questar the decision of whether they would *683 ever be paid. Substantial evidence shows they did not.
Feuer testified that at first, he was timely paid and only later did Questar fall behind in its payments. He testified that he repeatedly asked to be paid.[3] Helenius would tell him that the company would catch him up when it received its next financing check. Feuer knew investor checks were arriving in amounts of $25,000 and $50,000, but the funds were spent on other obligations. No one at Questar asked him to defer his wages. In fact, he told Helenius that no matter what happened with the company, he expected to be paid.
Tilley and Helenius argue that Feuer's conduct by continuing to work for Questar despite sporadic payments indicates a constructive agreement to defer his wages. The statutory disqualification does not speak in terms of a "constructive" agreement. Moreover, even under that rationale, Feuer's agreement ceased upon his resignation from the company. Any delay in the payment of his wages thereafter was not a knowing submission to the unlawful withholding of wages.
The evidence regarding Chelius is similarly straightforward. Questar signed a compensation agreement with Chelius, which stated that if the company terminated his employment, it would pay all wages due and owing within 30 days of his separation date. In fact, Questar did terminate Chelius' employment, but it never paid his wages. Helenius and Tilley point to evidence that the parties' contract was modified by an oral agreement that any payment of wages due was conditioned on the company having sufficient funds at the time to pay. But Chelius testified to the contrary and Helenius admitted during trial that he signed the contract because he knew Chelius would resign unless he obtained a written assurance of payment.
Tilley and Helenius nevertheless contend that Chelius and Feuer were as much responsible for the decision not to be paid as Tilley and Helenius were. They attempt to characterize Chelius and Feuer as co-founders by asserting that "all of the senior" team suffered severe financial hardship in an effort to get the company off the ground. But while they expected Chelius and Feuer to accept the same risks that they assumed, it was clear that Chelius and Feuer were not true co-founders. Tilley and Helenius gave neither Chelius nor Feuer any authority over the financial decisions of the company and the employees were not privy to the financial statements. The ultimate decision of how funding dollars were spent and what constituted "substantial financing" remained within the sole discretion of Helenius and Tilley.
Moreover, when Chelius learned that Tilley and Helenius wanted to form a new company that would continue Questar's product development, he proposed that he join the new venture as a co-owner. He made his work in raising financing for the new company contingent on this arrangement. But Tilley was so offended by this proposal that he left the meeting and refused to ever meet with Chelius again. This absolute delineation of Chelius as an employee underscores Chelius' right to receive the protection afforded by chapter 49.52 RCW.
Tilley and Helenius next argue that they should not be held individually liable for double damages and attorney fees because their failure to pay wages due was not willful. RCW 49.52.050 provides:
Any employer or officer ... of any employer... who ... [w]illfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract ... [s]hall be guilty of a misdemeanor.
If an employer knows that he is not paying wages when due, and intends such conduct, *684 then the action is willful.[4] However, if an employer was careless in failing to pay, or if a bona fide dispute existed between the employer and employee regarding the payment of wages, then no intent has been established and the failure to pay is not willful.[5]
Tilley and Helenius contend that when they sold Questar's assets, they arranged for the purchaser, Send.com, to pay Chelius and Feuer. Thus, they argue that a bona fide dispute existed over their obligation to pay because they believed they were relieved of the responsibility to pay. In Schilling v. Radio Holdings, Inc. the president of a radio station made a similar argument. He claimed that his failure to pay wages was not willful because he had sold his radio station and he believed that the new owners would pay the back wages.[6] The supreme court rejected his claim, holding that regardless of what he may have initially believed, he should have known the company would not pay in full when it later made a partial payment of wages conditioned on the employee's release of the former president and the new owner from liability for full payment.[7]
In this case, Questar did not continue under new ownership. Instead, Tilley and Helenius sold to Send.com Questar's software product in exchange for a license to use the software, cash, and the company's promise to pay sums owed to Chelius and Feuer. Unless a creditor consents, a debtor cannot avoid liability for a debt by obtaining a third party's agreement to pay it.[8] Chelius and Feuer knew of Send.com's purchase of Questar's assets, but they were not aware that the company had agreed to pay their wages. Moreover, Tilley and Helenius not only knew that Send.com did not pay Chelius and Feuer, they actively concealed the agreement from the employees to assist Send.com in avoiding payment.
We also reject Helenius' and Tilley's argument that they allegedly never received the significant funding on which the payment of wages was contingent. Evidence showed that the company raised over $2 million in funding and even in its late stages, Questar received sums of $155,000 and $50,000. Questar may have never turned a profit, but it did receive significant funding. There was no bona fide dispute about Questar's obligation to pay. Chelius and Feuer are entitled to exemplary damages and attorney fees. Because they are prevailing parties, we also grant Chelius' and Feuer's request for fees on appeal.[9]
AFFIRMED.
GROSSE and ELLINGTON, JJ., concur.
NOTES
[1] Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 712, 732 P.2d 974 (1987).
[2] Holman, 107 Wash.2d at 712, 732 P.2d 974; Ebling v. Gove's Cove, Inc., 34 Wash.App. 495, 501, 663 P.2d 132 (1983).
[3] See, e.g., e-mail from Feuer to Helenius:

"I just cashed a check for $1,000 today (thank you), which pays my rent for December ... but in a few days I have to worry about making food and rent for the next month.... I've been doing thisgoing one day at a timefor a few months now and it's too much.... [I]t is even harder when I see a $50,000 check come in, and I have to beg to get just 1/50th of that.... I do want to get paid, and whatever happens I expect to get paid my back salary and consulting bills and I want to work something out, to stay at Questar ... I'm just afraid of losing what little I have, like my health and my place to live...."
[4] Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 159-60, 961 P.2d 371 (1998).
[5] Schilling, 136 Wash.2d at 160, 961 P.2d 371.
[6] Schilling, 136 Wash.2d at 163, 961 P.2d 371.
[7] Schilling, 136 Wash.2d at 156, 163, 961 P.2d 371.
[8] Wadhams v. Page, 1 Wash. 420, 423, 25 P. 462 (1890) (creditors' rights not affected by one partner's transfer of liability to other partner).
[9] RAP 18.1; Kohn v. Georgia-Pacific Corp., 69 Wash.App. 709, 727, 850 P.2d 517 (1993).