214 P.3d 189 (2009)
Michael DURAND and Natasha Durand, both individually, and the marital community comprised thereof, Respondents,
v.
HIMC CORPORATION a/k/a/ Health Guard International Marketing Corporation, a corporation licensed and doing business within the State of Washington; ITI Internet Services, Inc., a corporation licensed and doing business *190 within the State of Washington; Judy Morton Johnston and "John Doe" Morton Johnston, both individually, and the marital community comprised thereof; Jerry Cornwell and "Jane Doe" Cornwell, both individually, and the marital community comprised thereof, Appellants.
No. 37088-3-II.
Court of Appeals of Washington, Division 2.
August 25, 2009.
*193 David B. Adler, Attorney at Law, Seattle, WA, for Appellants.
Paul Alexander Lindenmuth, Ben F. Barcus & Associates PLLC, Tacoma, WA, for Respondents.
Kristopher Ian Tefft, Association of Washington Business, Olympia, WA, Amicus Curiae on behalf of Association of Washington Business.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Health Guard International Marketing Corporation (HIMC), ITI Internet Services, Inc. (ITI), Judy Johnston, and Jerry Cornwell appeal the trial court's judgment in favor of Michael Durand on his claims for breach of employment contract and wrongfully withholding wages. They maintain that substantial evidence does not support the trial court's judgment for wrongful withholding of wages; they also argue that the trial court erred in (1) denying their motion for additional discovery time, (2) interpreting Durand's employment contracts, (3) admitting evidence of settlement negotiations to determine whether a bona fide dispute existed as to the amount owed Durand, and (5) awarding attorney fees to Durand. We affirm.

FACTS
¶ 2 HIMC is a holding company based in Tacoma, Washington. ITI is a wholly owned subsidiary of HIMC.
¶ 3 In 2005, Ron Ehli, the then principal of HIMC/ITI,[1] recruited Durand to leave his job in Vancouver, Washington, and relocate to Tacoma to work for the companies. Durand signed a formal job offer agreement (contract 1) on March 24, 2005. The job offer included a severance package authorizing one month's pay for each month worked as head of sales, with a maximum of 12 months. The contract provided Durand a $150,000 annual salary, a signing bonus if certain conditions were met, stock and stock options, and a 10 percent guaranteed bonus for 2005.
¶ 4 Durand started work at HIMC/ITI on April 18, 2005. On the same day, Virgil Llapitan, chief executive officer of ITI and president of HIMC, presented Durand with an employment agreement (contract 2) containing a five-year commitment. Llapitan testified that the purpose of contract 2 was to formalize the original terms of contract 1. Contract 2's termination provision states that "Durand shall receive compensation from the remaining contract term upon termination." Exhibit (Exh.) 3A. It also provides that Durand will receive $20,000 for relocating to Tacoma.
¶ 5 ITI paid Durand $12,500 per month under the contract terms until September 2005, when ITI's president, Ron Ehli, asked Durand to take a pay cut because of the company's deteriorating financial situation. Durand agreed to accept 56 percent of his salary as long as he would receive the full compensation, including back pay, once ITI's financial condition improved. Other employees also took a pay cut. Ehli confirmed that the pay cut was intended to be temporary.
¶ 6 A few months later, on February 21, 2006, the director of HIMC, Melissa Duthie, terminated Durand's employment.[2] After his termination, Durand notified HIMC/ITI that he had never received his relocation compensation, the 2005 annual bonus, or back wages from taking the temporary wage cut.
¶ 7 At a meeting on March 7, 2006, shareholders elected a new board of directors for HIMC/ITI. Johnston was elected secretary, and the board appointed Cornwell as chief executive officer of ITI.[3] Johnston and Cornwell were given check writing authority.
*194 ¶ 8 On March 23, 2006, Durand requested reemployment from HIMC/ITI, but their financial situation had not improved.[4] When the companies refused to rehire him, Durand demanded that they pay him under his contract. He requested a total of $692,708.26, which included compensation for the remaining four years of employment under the contract. Johnston testified that HIMC/ITI did not have sufficient funds to meet Durand's request. Durand testified that Cornwell told him that HIMC/ITI would not honor contracts from the prior board. HIMC/ITI asserted that contract 1's severance package (one month pay for each month worked) must be considered in determining the amount Durand could receive under contract 2 (compensation for the remaining term). HIMC/ITI eventually offered Durand a final settlement of $125,000, which Durand rejected.

Procedure
¶ 9 On November 22, 2006, Durand sued HIMC/ITI, Johnston, and Cornwell (collectively, the employers) alleging breach of contract, promissory estoppel, and wrongful withholding of wages. Durand based his wage claim on RCW 49.48.010 and chapter 49.52 RCW, arguing that the corporations and individuals named in the complaint were liable for double damages under RCW 49.52.070. He demanded (1) severance in the form of his future salary for the remaining time under the five-year term at $12,500 per month ($618,750), (2) his deferred salary from withheld wages ($38,958.26), (3) his relocation payment ($20,000), and (4) his 2005 annual bonus ($15,000), for a total of $692,708.26.
¶ 10 The court expedited the trial schedule at Durand's request. It set discovery cutoff for April 11, 2007, about 20 weeks after the complaint was filed, and the trial for May 23, 2007, about 6 weeks after the discovery cutoff.
¶ 11 Johnston and Cornwell did not file an answer; instead, they filed a CR 12(b)(6) motion to dismiss the lawsuit. The trial court granted the motion in part, dismissing Cornwell and Johnston from the breach of contract and promissory estoppel claims but declining to dismiss them on the wrongful withholding claim. After the trial court denied the employers' motion to certify the trial court's ruling for appeal, they moved for discretionary review, which we denied.
¶ 12 On April 26, 2007, Durand moved for summary judgment on the breach of contract and wrongful withholding claims. On April 27, 2007, the employers filed a motion to continue the trial date and for supplemental discovery, arguing that their motion for discretionary review, the unavailability of counsel, and their inability to conduct discovery entitled them to additional discovery time. The employers relied on CR 56(f), but they offered no explanation, other than their pretrial pleading practice, as to why they failed to timely complete discovery.
¶ 13 On May 4, 2007, the trial court continued the trial date to June 15, 2007. But it denied the employers' motion for additional discovery time. The trial court told the employers that they "ha[d] to live with [their] decision" over the previous 20 weeks to engage in pretrial litigation instead of discovery. Report of Proceedings (RP) at 98.
¶ 14 Before trial, the parties submitted a joint statement of evidence in which the employers included a series of settlement negotiation letters between Durand and HIMC/ITI. In the letters, the employers acknowledged that they owed Durand a minimum of $125,000 based on the terms of contract 1. Although the employers later sought to withdraw this evidence, the court admitted the letters.
¶ 15 The trial court entered judgment against HIMC/ITI on the breach of contract claim and against HIMC/ITI, Johnston, and Cornwell on the wrongful withholding claim. It found that Durand's employment contract included both contracts 1 and 2 and that contract 2 prevailed in the event of inconsistent terms. It also found that once Durand demanded payment, Cornwell and Johnston, who were the parties with check writing authority, decided not to pay Durand. Based *195 on the settlement negotiation letters, the court ruled that the employers willfully withheld $150,000 of Durand's contracted wages but that a bona fide dispute existed as to what amounts over $150,000 the employers owed.
¶ 16 The entire award broke down as follows: $618,750 to be paid by HIMC/ITI under breach of contract for Durand's base salary for the remaining four years, and two months of his contract; $38,958.26 to be paid by HIMC/ITI under breach of contract for deferred salary; $20,000 to be paid by HIMC/ITI under breach of contract for the relocation bonus; $15,000 to be paid by HIMC/ITI under breach of contract for the 2005 bonus; and $150,000 as liquidated damages from the undisputed amount of $150,000.
¶ 17 The trial court found Johnston, Cornwell, and HIMC/ITI jointly and severally liable for the undisputed amount of wrongfully withheld wages, $150,000; plus double damages, $150,000; and prejudgment interest on the undisputed amount at 12 percent, $31,062.55.[5] The employers moved for a new trial, which the trial court denied.
¶ 18 The trial court awarded Durand attorney fees and added a 1.5 multiplier after finding that the case involved high risk recovery. It also ordered the defendants to file a supersedeas bond with the court.

ANALYSIS

I. Trial Schedule and Continuance
¶ 19 The employers contend that the trial court's refusal to grant their motion for supplemental discovery prevented them from putting on a defense. The employers cite only to Pierce County Local Rule (PCLR) 1(h)(1) and 2 to support their argument.[6]
¶ 20 Under PCLR 1, the trial court generally sets the discovery cutoff at 45 weeks and the trial date at 52 weeks after the complaint is filed. But in an expedited trial, the court allows only 20 weeks for discovery and sets the trial 26 weeks after the complaint is filed. PCLR 1(g). Here, there were more than four witnesses at trial, but contrary to the employers' assertion, PCLR 1(h)(2) does not limit expedited trials to cases involving four or fewer witnesses; it simply states that an expedited trial is presumed when there are not more than four witnesses. The trial court complied with PCLR (1), allowing 20 weeks for discovery and setting the trial at 26 weeks. Nevertheless, we consider whether the trial court should have granted the employers more discovery time under CR 56(f) in light of the expedited trial schedule.
¶ 21 CR 56(f) permits a trial court to continue a summary judgment motion when the party seeking a continuance offers a good reason for the delay in obtaining the discovery. In addition, the party must provide an affidavit stating what evidence the party seeks and how it will raise an issue of material fact to preclude summary judgment. Qwest Corp. v. City of Bellevue, 161 Wash.2d 353, 369, 166 P.3d 667 (2007) (quoting Butler v. Joy, 116 Wash.App. 291, 299, 65 P.3d 671 (2003)). We review the trial court's refusal to grant a continuance for abuse of discretion. Qwest, 161 Wash.2d at 369, 166 P.3d 667. Here, the trial court properly denied the employers' motion because they failed to exercise diligence in obtaining discovery.
¶ 22 First, the employers did not request Durand's deposition until after the discovery cutoff had passed. Additionally, they had not submitted any interrogatories or asked to take any depositions prior to discovery cutoff. And although the employers argued that they wanted to take the deposition of A.J. McCanna HIMC/ITI employee who was terminated before Durandthey presented no proof to the trial court that McCann would provide useful testimony, and McCann never testified at trial. Because the *196 employers offered no valid reasons for their failure to diligently pursue discovery, the trial court did not abuse its discretion in denying their motion for supplemental discovery.

II. Breach of Contract Against HIMC/ITI
¶ 23 HIMC/ITI argue that the trial court erred in finding that they breached their contract with Durand.[7] They contend that the trial court erred by relying on and interpreting the terms of contract 2. We disagree.
¶ 24 When an employee ceases to work for an employer, the employer must pay the employee the wages due to him or her. RCW 49.48.010. If the employer fails to do so, the employee may bring a cause of action to recover the amount owed and is entitled to attorney fees. RCW 49.48.030. HIMC/ITI's appeal of Durand's wage claim under RCW 49.48.010 rests on the trial court's contract interpretation.

A. Standard of Review

¶ 25 Contract interpretation is generally a determination of fact; "it is the process that ascertains the meaning of a term by examining objective manifestations of the parties' intent." Denny's Rests., Inc. v. Sec. Union Title Ins. Co., 71 Wash.App. 194, 201, 859 P.2d 619 (1993). The "touchstone of contract interpretation is the parties' intent." Tanner Elec. Coop. v. Puget Sound Power & Light, 128 Wash.2d 656, 674, 911 P.2d 1301 (1996). We look for the parties' intent in the contract's language, subject, and objective; the circumstances surrounding formation; the parties' subsequent conduct; and the reasonableness of the parties' interpretations. Tanner, 128 Wash.2d at 674, 911 P.2d 1301 (quoting Scott Galvanizing, Inc. v. Nw. Enviroservices, Inc., 120 Wash.2d 573, 580-81, 844 P.2d 428 (1993)). Here, the trial court interpreted the contract between Durand and HIMC/ITI and concluded that HIMC/ITI breached the contract by failing to pay Durand severance pay, the 2005 bonus, and the relocation assistance.[8] We agree.

B. Severance

¶ 26 HIMC/ITI contends that the trial court erred in granting severance pay for the months remaining under Durand's five-year contract because contract 2 is ambiguous as to severance pay and, thus, the court should have applied contract 1's severance pay provision. We disagree.
¶ 27 When a second contract between the same parties deals with the same subject matter as the first, but it does not state whether it is intended to discharge or replace the first, the contracts must be interpreted together, and the second agreement prevails if there are any inconsistencies. Flower v. T.R.A. Indus., Inc., 127 Wash.App. 13, 29, 111 P.3d 1192 (2005) (quoting Lynch v. Higley, 8 Wash.App. 903, 911, 510 P.2d 663 (1973)).
¶ 28 Here, the second contract promised Durand compensation for any portion of the five-year term remaining after termination. Contract 2's terms specifically provide that should "the Company or any of its successors ... terminate this agreement early, Durand shall receive compensation from the remaining contract term upon termination." Exh. 3A. Although contract 1 awarded only one month's severance for every month worked, contract 2 prevails over this inconsistency. Flower, 127 Wash.App. at 29, 111 P.3d 1192. Thus, the trial court did not err in awarding Durand severance pay under contract 2.
¶ 29 HIMC/ITI also argues that, even under contract 2, payment for the entire remaining contract term is not included in the "compensation" provision. But compensation applies to more than work actually performed; it applies to any form of compensation that is a byproduct of the employment relationship. Dice v. City of Montesano, 131 Wash.App. 675, 689, 128 P.3d 1253 (2006). Here, the compensation remaining under the *197 terminated contract included five years' salary. Additionally, the "termination" provision in contract 2 is under a broader section entitled "Compensation." Exh. 3A. We reject HIMC/ITI's argument that the remaining five years' salary is not "compensation."

C. 2005 Bonus

¶ 30 HIMC/ITI also argues that Durand was not entitled to a $15,000 bonus for 2005. Both contract 1 and contract 2 explicitly state that Durand is guaranteed at least a 10 percent bonus for the 2005 year. Ehli confirmed the intent as to this provision: Durand was guaranteed a bonus of at least 10 percent of his annual salary ($150,000) at the end of 2005. The trial court properly awarded Durand $15,000 under the 2005 bonus provision.

D. Relocation Assistance

¶ 31 HIMC/ITI further contend that the trial court erred in determining that the relocation assistance provision required them to pay Durand $20,000 without proof of his relocation expenses.
¶ 32 The evidence supports the trial court's interpretation of the relocation provision. Contract 2 provides that "Durand will receive $20,000.00 as relocation expenses for relocation to the Tacoma area." Exh. 3A (emphasis added).[9] Although Llapitan had referred before trial to the relocation assistance as a "signing bonus" that included moving expenses, he later testified that the parties intended the relocation provision to reimburse Durand for his actual moving costs. RP at 841-42; Exh. 68.[10] But Ehli testified that the $20,000 was intended to be a lump sum bonus that did not depend on actual receipts from moving costs. Significantly, the contract does not contain any conditions regarding receipts or proof of moving before the bonus becomes due; it states that Durand "will receive" the money as relocation expenses. Exh. 3A (emphasis added). The trial court properly interpreted the "relocation assistance" provision as a lump sum bonus that did not require proof of actual expenses.

III. Wrongful Withholding and Double Damages
¶ 33 The employers next contend that the evidence was insufficient to find willful withholding of wages under RCW 49.52.050 and, thus, the trial court erred by imposing liability under RCW 49.52.070.

A. Standard of Review

¶ 34 Where the trial court has weighed the evidence, we ask whether substantial evidence supports its findings and, if so, whether those findings support the trial court's conclusions of law and judgment. Ridgeview Props. v. Starbuck, 96 Wash.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence is that which is sufficient "to persuade a fair-minded person of the truth of the declared premise." Ridgeview, 96 Wash.2d at 719, 638 P.2d 1231. We review conclusions of law de novo. Robel v. Roundup Corp., 148 Wash.2d 35, 42, 59 P.3d 611 (2002).

B. Statutory Background

¶ 35 Durand's wrongful withholding claim arises from statute and focuses on whether the failure to pay was willful and done by the proper corporate agent.
Any employer or officer, vice principal or agent of any employer ...
...
who ... (2)[w]illfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract,

... [s]hall be guilty of a misdemeanor.
RCW 49.52.050 (emphasis added).
¶ 36 A plaintiff can file a claim under RCW 49.52.070 when he can show a violation of RCW 49.52.050(2), subjecting the violator *198 to twice the amount of wages unlawfully withheld and to attorney fees and costs. But the employee is not entitled to such a benefit if he "knowingly submitted to such violations." RCW 49.52.070. Furthermore, the court cannot find a willful failure to pay if (1) the failure is the result of carelessness or error or (2) when a bona fide dispute exists as to the amount of wages owed or whether there was an employer/employee relationship. Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 160, 961 P.2d 371 (1998). The evidence here is sufficient to prove wrongful withholding.

C. Willfulness

¶ 37 An employer's failure to pay wages due is willful if the employer knows what he or she is doing, intends to do it, and is a free agent. Schilling, 136 Wash.2d at 159-60, 961 P.2d 371 (citations omitted).
¶ 38 Here, the employers contend they are not free agents and could not willfully withhold wages because they were bound by a criminal statute not to write a check for insufficient funds. See RCW 9A.56.060. They argue that their inability to pay should have precluded the trial court from finding that they willfully withheld wages. The employers reason that the trial court's analysis puts them in a position where they will be subject to criminal liability if they write the check and civil liability if they do not. See RCW 9A.56.060 (knowingly writing a check from an account with insufficient funds is a crime).
¶ 39 Johnston testified that HMIC/ITI did not have sufficient funds to meet Durand's demand for $692,708. But the record reflects that the employers were able to pay the undisputed amount for which they were found ultimately liable under RCW 49.52.070: they repeatedly offered to settle the disagreement for the undisputed amount. Furthermore, they continued to conduct business, pay employees, and pay $6,357 to $21,245 per month in attorney fees. We reject the employers' argument that they had insufficient funds to pay the wages contractually owed to Durand.
¶ 40 More importantly, financial inability is not a defense to liability under the wrongful withholding statute. Morgan v. Kingen, 166 Wash.2d 526, 210 P.3d 995 (2009) (citing Schilling, 136 Wash.2d 152, 961 P.2d 371).[11] In Morgan, our Supreme Court held that even though the corporation had filed for bankruptcy, the corporation's inability to pay was not a defense to liability under RCW 49.52.070. Morgan, 166 Wash.2d at 537, 210 P.3d 995. The officers there, like the officers here, continued to operate the company and made decisions as to payroll and handling other creditors. Morgan, 166 Wash.2d at 537, 210 P.3d 995. And even if the employers here could not have written a check for Durand's entire demand, Johnston admitted that they could have made payments to cover the undisputed amount for which they were ultimately found liable. HMIC/ITI's claimed inability to pay does not preclude a finding that the employers willfully failed to pay. See Morgan, 166 Wash.2d at 537, 210 P.3d 995.

D. Individual Liability

¶ 41 Johnston and Cornwell assert that the trial court erred in finding them individually liable under chapter 49.52 RCW because Durand did not "pierce the corporate veil" and because they are protected by the business judgment rule. Br. of Appellant at 43-46; Reply Br. of Appellant at 16.

i. Piercing the Corporate Veil
¶ 42 Johnston and Cornwell contend that they were not "employers" under RCW 49.52.070 and that they cannot be held personally liable unless Durand can "pierce the *199 corporate veil." Br. of Appellant at 43-46. Again, we disagree.
¶ 43 We liberally construe the wrongful withholding statute "to advance the Legislature's intent to protect employee wages and assure payment." Schilling, 136 Wash.2d at 159, 961 P.2d 371. RCW 49.52.070 imposes individual liability against an "employer and any officer, vice principal or agent of any employer." (Emphasis added.) A person is a "vice principal," and personally liable under RCW 49.52.070 in a wrongful withholding of wages case when that person exercises control over the payment of funds and acts under that authority. Ellerman v. Centerpoint Prepress, Inc., 143 Wash.2d 514, 521, 22 P.3d 795 (2001). In contrast, a person who has no control over the payment of wages on behalf of a corporation is not subject to liability. Ellerman, 143 Wash.2d at 521, 22 P.3d 795.
¶ 44 Here, both Cornwell and Johnston had check writing authority and refused to pay Durand. And liability under RCW 49.52.070 does not turn on piercing the corporate veil. See Dickens v. Alliance Analytical Labs., 127 Wash.App. 433, 442, 111 P.3d 889 (2005) (finding a material issue of fact as to whether a manager's conduct made him an agent under RCW 49.52.070, but concluding that liability could be imposed against him by piercing the corporate veil). Because Johnston and Cornwell each exercised control over the direct payment of funds and acted under that authority by refusing to pay Durand, the trial court did not err in finding them personally liable under RCW 49.52.070.

ii. Business Judgment Rule Protection
¶ 45 Johnston and Cornwell also argue in passing that the trial court erred in rejecting their claim to protection under the business judgment rule. Durand counters that the business judgment rule does not protect Johnston and Cornwell because wrongful withholding of wages is a crime and cannot be reasonable.
Under the `business judgment rule,' corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith.
Scott v. Trans-Sys., Inc., 148 Wash.2d 701, 709, 64 P.3d 1, (2003) (quoting Nursing Home Bldg. Corp. v. DeHart, 13 Wash.App. 489, 498, 535 P.2d 137 (1975)).
¶ 46 The business judgment rule prevents the court from substituting its judgment for that of a corporation's directors when they act in good faith. In re Spokane Concrete Prods., Inc., 126 Wash.2d 269, 279, 892 P.2d 98 (1995); see RCW 23B.08.300, .420 (requiring directors and officers to act reasonably and in good faith). Here, the business judgment rule does not apply because the legislature has specifically expressed the public policy that an employer who willfully withholds wages commits a misdemeanor and also subjects itself to personal liability. RCW 49.52.070. The business judgment rule offers no comfort for Johnston and Cornwell. The trial court properly rejected this defense.

E. Waiver

¶ 47 The employers also argue in passing that Durand waived his right to double damages because he voluntarily agreed to temporarily defer salary payment. The trial court found otherwise, a finding that the evidence supports.
¶ 48 A person knowingly submits to withholding of wages when he or she intentionally defers to his or her employer the decision as to whether, if ever, he or she will be paid. Chelius v. Questar Microsystems, Inc., 107 Wash.App. 678, 682, 27 P.3d 681 (2001). An employee does not "knowingly submit" to unlawful withholding of wages by staying on the job even after the employer fails to pay. Chelius, 107 Wash.App. at 683, 27 P.3d 681.
¶ 49 Here, Durand testified that his agreement to defer his salary was temporary, lasting only until the companies were in better financial circumstances; the employers agree. Durand always expected to be paid the full amount he was entitled to under *200 his contract, and Ehli testified that Durand was promised the back pay when the corporation was "financially able." RP at 721. This evidence amply supports the trial court's finding that Durand did not "knowingly submit" or waive his back pay, his 2005 bonus, and his relocation bonus.
¶ 50 We find that there is sufficient evidence to find wrongful withholding of wages.
¶ 51 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
¶ 71 Affirmed.
We concur: BRIDGEWATER P.J., and HUNT, J.
NOTES
[1] Because both HIMC and ITI employed Durand, we refer to the companies as HIMC/ITI unless otherwise noted.
[2] The reasons for terminating Durand are unclear.
[3] Neither Cornwell nor Johnston was involved in Durand's termination.
[4] The corporations experienced a net loss of $26,589 in the third quarter of 2006, and low net incomes ($10,470 and $4,855) for the following two quarters.
[5] Undisputed amount was 21.65 percent of the total prejudgment interest, $143,475.99.
[6] Appellants' brief often fails to justify our review under the Rules of Appellate Procedure. See RAP 10.3(a), 18.1(b). The appellants frequently fail to assign error to the trial court's rulings, do not cite authority for arguments, improperly make arguments in the statement of the case, do not properly request attorney fees, and seem to ask us to review nonappealable issues simply because the trial court did not rule in their favor. Nevertheless, we exercise our discretion and review the issues raised.
[7] Chapter 49.48 RCW does not apply to individuals, which explains why the trial court dismissed Cornwell and Johnston from the breach of contract claim.
[8] HIMC/ITI do not appeal the court's determination that Durand is entitled to $38,958 deferred salary.
[9] Contract 1 also contains an addendum that entitled Durand to a $20,000 bonus upon completion of certain requirements that Durand did not complete.
[10] Durand never submitted any moving receipts.
[11] In Schilling, the court interpreted chapter 49.52 RCW and held that financial inability was not a defense to personal liability. Schilling, 136 Wash.2d at 163-64, 961 P.2d 371. The employers contend that we should limit Schilling to its facts and urge us to look to the legislative history of chapter 49.52 RCW to determine whether inability to pay is a defense. They argue that cases like Morgan have misinterpreted Schilling. These arguments are without merit because legislative inaction after judicial interpretation of a statute likely indicates legislative approval of the court's interpretation. See, e.g., Hangman Ridge Training Stables, Inc., v. Safeco Title Ins. Co., 105 Wash.2d 778, 789, 719 P.2d 531 (1986).