# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ROBERT RUHL and PATRICIA PETERSON, | ) ) ) | No. 72604-8-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| PROJECTCORPS, LLC, a Washington limited liability company, MICHELLE D. GADDIE, individually; and the marital community of MICHELLE D. GADDIE and KIMBERLY D. VALENZANO-GADDIE, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) ) | FILED: February 16, 2016 |

VERELLEN, A.C.J. — ProjectCorps, LLC appeals the partial summary judgment order awarding unpaid salary and commissions, double damages, attorney's fees, and prejudgment interest to its former employees, Robert Ruhl and Patricia Peterson. RCW 49.52.070 provides for double damages when an employer willfully refuses to pay an employee wages owed. But if a "bona fide dispute" exists over the employer's obligation to pay all of the employee's wages, or if the employee "knowingly submitted" to the withholding of wages, then RCW 49.52.070 does not apply.

We conclude genuine issues of material fact remain whether a bona fide dispute exists for Ruhl's and Peterson's 2013 salary and whether Ruhl and Peterson knowingly

submitted to the withholding of their commissions. Accordingly, we reverse the partial summary judgment order regarding the 2013 salary and the commissions and related double damages and attorney's fees award. We remand for further proceedings consistent with this opinion.

## FACTS

Michelle Gaddie formed and owned ProjectCorps. In 2011, ProjectCorps hired Ruhl and Peterson. Their compensation included salary and commissions. Ruhl and Peterson were paid salary twice per month at the rate of $7,083.33 every pay period.

ProjectCorps experienced financial difficulties. In March 2012, Gaddie told Ruhl and Peterson that she intended "to cut" their salaries because of the company's "precarious financial position."[1] Ruhl and Peterson were "interested in becoming owners of the company."[2] Ruhl and Peterson agreed "to defer" their salaries so that those funds could be used as a buy-in if they became owners, or until ProjectCorps was in a better financial situation.[3]

In July 2012, ProjectCorps ended the "salary deferment" and returned Ruhl and Peterson to full salary.[4] Ruhl and Peterson did not become owners.

In January 2013, ProjectCorps faced "insurmountable financial difficulties."[5] Gaddie told Peterson "the company needed to cut salaries."[6] Gaddie informed

---

[1] Clerk's Papers (CP) at 272, ¶ 13.

[2] CP at 272, ¶ 13.

[3] CP at 272, ¶ 13 (internal quotation marks omitted).

[4] CP at 272, ¶ 14.

[5] CP at 273, ¶ 14.

[6] CP at 273, ¶ 14.

Peterson that "effective March 16, 2013, her salary and her husband's salary would be cut by 20%."[7] Gaddie directed the office manager Karen Chenkovich "to make the changes in payroll."[8] Ruhl's and Peterson's salaries were reduced by 20 percent.

On April 8, 2013, Gaddie e-mailed Ruhl and Peterson with the subject line "Total for 2012 Salary Deferral":

> As you know, Karen has done a nice job of keeping track of and we have maintained visibility of your 2012 salary deferral since March 2012. This is itemized below.
>
> Please know that repayment of this money is very important to ProjectCorps and will be paid just as soon as we are able to. Once we return to a level of profitability that can support repayment, I will put a repayment plan in place for this amount and will then turn my attention to 2012 commissions.[9]

The parties agree ProjectCorps owes Ruhl and Peterson each $11,333.36 for 2012 salary.

On April 12, 2013, Gaddie e-mailed Ruhl and Peterson with the subject line "Deferred Commissions."[10] Gaddie stated ProjectCorps owed them deferred commissions payments for "commissions earned" of $24,316.72 to Ruhl and $45,114.93 to Peterson.[11]

On June 20, 2013, ProjectCorps terminated Ruhl and Peterson. A few days later, Chenkovich resigned as ProjectCorps's office manager. ProjectCorps hired

---

[7] CP at 273, ¶ 14.

[8] CP at 273, ¶ 14.

[9] CP at 119, 162.

[10] CP at 119, 162.

[11] CP at 119, 162.

3

Kimberly Valenzano to replace Chenkovich. Valenzano reviewed ProjectCorps's financial records and concluded ProjectCorps had overpaid Ruhl and Peterson.

In July 2013, Ruhl and Peterson sued ProjectCorps on a variety of legal theories, including violations of the wage rebate and wage payment acts,[12] for ProjectCorps's withholding of their salaries and commissions. Ruhl and Peterson sought partial summary judgment on their statutory wage claims. The trial court granted Ruhl and Peterson partial summary judgment. The court concluded ProjectCorps's withholding of their salaries and commissions was "willful," and Ruhl and Peterson "did not knowingly submit to the violation."[13] The partial summary judgment order awarded Ruhl and Peterson $216,529.98 in unpaid compensation and double damages. The court also struck Valenzano's declaration testimony.

The trial court awarded Ruhl and Peterson $18,029.36 in attorney's fees. The parties stipulated to entry of a CR 54(b) final judgment for purposes of an immediate appeal, which awarded Ruhl and Peterson $256,499.65.

ProjectCorps appeals.

## ANALYSIS

### Standard of Review

We review a summary judgment order de novo.[14] The de novo standard also applies to all evidentiary rulings on summary judgment.[15] We view the facts and all

---

[12] Ch. 49.52 RCW; ch. 49.48 RCW.

[13] CP at 593.

[14] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

[15] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

reasonable inferences in the light most favorable to the nonmoving party.[16] Summary judgment is proper if there are no genuine issues of material fact.[17] "'A material fact is one that affects the outcome of the litigation.'"[18]

### 2012 Salary

ProjectCorps has not assigned error to the $11,333.36 award of 2012 salary to Ruhl and Peterson. ProjectCorps has not argued the award of 2012 salary was improper. Nor does ProjectCorps challenge the award of attorney's fees and double damages for the 2012 salary. Absent an assignment of error, briefing, and argument, we conclude the award of 2012 salary, together with attorney's fees and double damages associated with that salary, are uncontested on appeal.[19]

### 2013 Salary

ProjectCorps contends a genuine issue of material fact remains whether a bona fide dispute exists for Ruhl's and Peterson's 2013 salary. We agree.

RCW 49.52.070 provides for double damages "when an employer willfully withholds wages due an employee."[20] The term "willful" means the employer's failure to

---

[16] Fulton v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[17] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013) (quoting Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

[18] Morgan v. Kingen, 166 Wn.2d 526, 533, 210 P.3d 995 (2009) (quoting Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).

[19] RAP 10.3(a)(6) (parties must support their arguments with citations to legal authority and references to relevant parts of the record); Valente v. Bailey, 74 Wn.2d 857, 858, 447 P.2d 589 (1968) (errors not set forth as "assignments of error" precludes appellate review); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

[20] Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 154, 961 P.2d 371 (1998).

pay was "volitional."[21] "If an employer knows that [s]he is not paying wages when due, and intends such conduct, then the action is willful."[22]

Two instances negate a finding of willfulness: the employer's failure to pay wages was due to carelessness or inadvertence or was "the result of a bona fide dispute."[23] The employer bears the burden of showing a "bona fide dispute."[24] The employer must have a "genuine belief" that she is not obligated to pay certain wages,[25] and such belief must be "fairly debatable."[26]

The issue of whether an employer acts willfully is generally a question of fact. But the issue may be resolved on summary judgment when no material facts are in dispute.[27] The trial court here concluded in its oral ruling:

> [T]here's no evidence that there was a reduction of salary as opposed to a continuing financial straits that . . . the defense found itself in and that just as it did before, it simply started paying them less than their salary. There's no evidence of a salary change. There is evidence of . . . shorting them on their payment. And I find that . . . there's not a genuine issue of material fact[ ] as to the salary that was withheld for 2013.[28]

---

[21] Failla v. FixtureOne Corp., 181 Wn.2d 642, 655, 336 P.3d 1112 (2014).

[22] Chelius v. Questar Microsystems, Inc., 107 Wn. App. 678, 684, 27 P.3d 681 (2001).

[23] Failla, 181 Wn.2d at 655; Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 175 Wn.2d 822, 834, 287 P.3d 516 (2012).

[24] Schilling, 136 Wn.2d at 161.

[25] Duncan v. Alaska USA Fed. Credit Union Inc., 148 Wn. App. 52, 79, 199 P.3d 991 (2008).

[26] Moore v. Blue Frog Mobile, Inc., 153 Wn. App. 1, 8, 221 P.3d 913 (2009).

[27] Schilling, 136 Wn.2d at 160.

[28] Report of Proceedings (May 9, 2014) at 42.

From January 1, 2013 to March 15, 2013, Ruhl and Peterson each received $7,083.33 per pay period. From March 16, 2013 to May 15, 2013, Ruhl and Peterson each received $5,666.67 per pay period.[29]

In her declaration, Gaddie states she informed Peterson that her and her husband's salaries "would be cut by 20%" effective March 16, 2013.[30] Contrary to Ruhl's and Peterson's arguments, this statement is not inadmissible hearsay. Gaddie was an authorized agent for ProjectCorps stating the terms of Ruhl's and Peterson's employment. An out-of-court statement that has "independent legal significance" is not hearsay.[31] Gaddie's statement had independent legal significance as a change in the terms of compensation. Ruhl and Peterson offer no authority to support their suggestion that an employer is limited to written business records to establish changes in the terms of employment.[32]

Ruhl and Peterson claim a party cannot create a genuine issue of material fact by offering a declaration opposing summary judgment that contradicts admissions

---

[29] Ruhl and Peterson each received $5,666.66 for the April 1, 2013 to April 15, 2013 pay period. Ruhl and Peterson claim ProjectCorps also withheld $1,416.66 in wages during the May 16, 2013 to May 31, 2013 pay period, but that paycheck is absent from the record.

[30] CP at 273, ¶ 14.

[31] 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.10, at 342 (5th ed. 2007); see also Cranwell v. Mesec, 77 Wn. App. 90, 101, 890 P.2d 491 (1995) (tenant's consent to inspection is significant "'solely in the fact that it was made'" and is not hearsay (quoting ROBERT H. ARONSON AND MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON, 801-5 (Supp. 1989))); United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004) ("out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay"); Steadman v. Green Tree Servicing, LLC, No. C14-0854JLR, 2015 WL 2085565, at *6 n.3 (W.D. Wash. 2015) (statements that have independent legal significance are exempted from the hearsay definition).

[32] See Haley v. Brady, 17 Wn.2d 775, 788, 137 P.2d 505 (1943) (oral modification of written contract enforceable).

pleaded in an answer. Generally, a party's affidavit that contradicts prior deposition or interrogatory answers "cannot be used to create an issue of material fact."[33] The cases that Ruhl and Peterson rely upon involve deposition testimony or interrogatories that were later contradicted by an affidavit opposing a summary judgment motion. But Gaddie's declaration does not contradict any deposition testimony or answers to interrogatories. Ruhl and Peterson provide no authority that for purposes of opposing summary judgment, a party is precluded from making a declaration that conflicts with an admission pleaded in an answer.[34]

Ruhl and Peterson offer evidence challenging the credibility of Gaddie's declaration testimony of a salary pay cut. For example, Ruhl's and Peterson's earnings records filed with the Washington State Department of Enterprise Services do not reflect a wage decrease, but similar earnings records for two other ProjectCorps employees reveal their salary change. Such contradictory evidence merely attacks the credibility or weight of Gaddie's declaration. "Courts do not weigh the evidence or assess witness credibility on a motion for summary judgment."[35]

---

[33] McCormick v. Lake Wash. Sch. Dist., 99 Wn. App. 107, 111, 992 P.2d 511 (1999); see also In re Kelly and Moesslang, 170 Wn. App. 722, 739, 287 P.3d 12 (2012) (cannot create an issue of material fact by filing an affidavit that contradicts a prior statement without explanation); Dep't of Labor & Indus. v. Kaiser Aluminum & Chem. Corp., 111 Wn. App. 771, 778, 48 P.3d 324 (2002) (rejecting affidavit that contradicts prior admissions made through interrogatories); Selvig v. Caryl, 97 Wn. App. 220, 225, 983 P.2d 1141 (1999) (rejecting affidavit that contradicts prior deposition testimony).

[34] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by authority or analysis need not be considered).

[35] Volk v. Demeerleer, 184 Wn. App. 389, 430, 337 P.3d 372 (2014); see also Powell v. Viking Ins. Co., 44 Wn. App. 495, 502-03, 722 P.2d 1343 (1986) (credibility questions of a witness whose statements are critical to an important issue in the case should preclude summary judgment); Hotchkiss v. CSK Auto Inc., 918 F. Supp. 2d 1108, 1131 (E.D. Wash. 2013) (employee's "self-serving" statement that he spent many

Therefore, we conclude Gaddie's declaration creates a genuine issue of material fact whether Ruhl's and Peterson's salaries were cut 20 percent effective March 16, 2013. Any such wage cut could negate a willful withholding of 2013 salaries.

*Commissions*

ProjectCorps contends a genuine issue of material fact remains whether Ruhl and Peterson "knowingly submitted" to the withholding of their commissions. We agree.

Double damages for willful withholding "are not available to any employee who has knowingly submitted to such violations."[36] To have "knowingly submitted" to a withholding of commissions, the employee must have "deliberately and intentionally" deferred to his or her employer the decision of whether or when he or she would "ever be paid."[37] "An employee does not 'knowingly submit' to unlawful withholding of wages by staying on the job even after the employer fails to pay."[38]

Washington courts have analyzed the "knowingly submitted" language of RCW 49.52.070 in two leading decisions: Chelius v. Questar Microsystems[39] and Durand v. HMIC Corporation.[40]

---

hours completing mandatory training modules during his unpaid lunch breaks was sufficient to create issue of fact as to employee's unpaid wages claim).

[36] RCW 49.52.070.

[37] Chelius, 107 Wn. App. at 682; see also Durand v. HMIC Corp., 151 Wn. App. 818, 836-37, 214 P.3d 189 (2009); Bury v. NCS Power Inc., No. C12-5641 BHS, 2013 WL 6682943, at *3 (W.D. Wash. Dec. 18, 2013) (court order) (employee "knowingly submits" to the unlawful withholding of wages by deferring all payment decisions to the employer).

[38] Durand, 151 Wn. App. at 837.

[39] 107 Wn. App. 678, 27 P.3d 681 (2001).

[40] 151 Wn. App. 818, 214 P.3d 189 (2009).

In Chelius, employees Feuer and Chelius sued their employer for back wages. During his employment, Feuer repeatedly "asked" and "expected to be paid."[41] The employer assured Feuer that it "would catch him up when it received its next financing check."[42] No one asked Feuer to defer his wages.[43] Chelius agreed to defer his wages, but only for the first three months of his employment.[44] His compensation agreement provided that, upon termination, the employer "would pay all wages due and owing within 30 days of his separation date."[45] Chelius testified he and his employer never orally modified the compensation agreement to provide that "any payment of wages due was conditioned on the company having sufficient funds at the time to pay."[46]

The employer argued both employees had "knowingly submitted" to the wage withholding. The Chelius court concluded the employees had never agreed to forgo their right to ever be paid despite accepting sporadic payments.[47] Any "constructive agreement" to defer wages "ceased" as soon as the employment relationship ended.[48]

In Durand, an employee sued his employer for back wages. During his employment, the employee agreed to accept a reduced salary but always expected to receive full compensation once the employer's "financial condition improved."[49] The

---

[41] Chelius, 107 Wn. App. at 682-83.

[42] Id. at 683.

[43] Id. at 682-83.

[44] Id. at 680.

[45] Id. at 683.

[46] Id.

[47] Id. at 683-84.

[48] Id. at 683.

[49] Durand, 151 Wn. App. at 824.

employer knew "the pay cut was intended to be temporary"[50] and promised the employee the back pay when the company was "financially able."[51] The Durand court concluded the employee, by agreeing to defer his salary "until the [employer was] in better financial circumstances," did not knowingly submit to withholding of wages.[52]

Gaddie's declaration chronicles the history of ProjectCorps's financial instability, the commission program, and Ruhl's and Peterson's "salary" deferral.[53] Although Gaddie's declaration does not mention any deferral of commissions, the April 12, 2013 e-mails do refer to "Deferred Commissions" and confirm the "deferred commission total owed" to Ruhl and Peterson.[54] Because Chenkovich tracked Ruhl's and Peterson's commissions and Gaddie sent the April 12 e-mail totaling the deferred commissions, there is a reasonable inference ProjectCorps contemplated possible future payment. But nothing in the record from either party indicates whether the deferral of Ruhl's and Peterson's commissions was absolute and indefinite, i.e., completely within ProjectCorps's control, or conditional and temporary.

Ruhl and Peterson sought summary judgment on terse declarations that lack the details present in Durand and Chelius.[55] They only state they were not paid commissions. They never testified that the deferral of commissions was temporary and lasted only until ProjectCorps was in better financial circumstances.[56] They neither

---

[50] Id.

[51] Id. at 837.

[52] Id.

[53] CP at 272, ¶ 13.

[54] CP at 119, 162.

[55] See CP at 78-79, 121-22.

[56] Durand, 151 Wn. App. at 837.

testified that they were "promised the back pay when [ProjectCorps] was financially able" nor that they always asked and expected to be paid the deferred commissions.[57] And Ruhl's employment contract does not provide that any unpaid compensation is due upon termination.

Absent any details about the nature of the deferral, Ruhl and Peterson did not meet their initial burden as moving parties to establish an unlawful withholding of the deferred commissions.[58] A genuine issue of material fact exists whether Ruhl and Peterson knowingly submitted to an absolute and indefinite deferral of their commissions that would preclude double damages and attorney's fees.

*Valenzano's Declaration Testimony*

If the issue arises on remand, we note that portions of Valenzano's declaration testimony are admissible. A lay witness's testimony must be based on personal knowledge.[59] Representations of fact by a person currently in charge of a company's financial records for which he or she has personal knowledge are admissible.[60] For

---

[57] Id. (internal quotation marks omitted); Chelius, 107 Wn. App. at 682-83.

[58] Ruhl and Peterson claim "knowingly submitted" is an affirmative defense, but they cite no authority for that proposition. Respondents' Br. at 33-34. As the moving parties, they had the burden to show the commissions were willfully withheld. The statutory provision regarding "knowingly submitted" is one part of the statutory scheme governing what is considered a willful withholding. RCW 49.52.070. The April 12 e-mails that they submitted supporting their summary judgment motion expressly refer to "deferred commissions." CP at 119, 162. Their declarations did not disavow a deferral. In this setting, their initial burden on summary judgment to establish a willful withholding included some showing of the terms or context of the deferral.

[59] ER 602, 701; Moore v. Hagge, 158 Wn. App. 137, 157, 241 P.3d 787 (2010).

[60] Carlisle Packing Co. v. Deming, 62 Wash. 455, 462-63, 114 P. 172 (1911) (statements from account books properly admitted through the company's manager's testimony that "he had personal knowledge of all the items of the statement, and that the items were correct"); Pacific Int'l Grout Co. v. Zinkova, No. 2:12-CV-00778-MJP, 2012 WL 3051771, at *3 (W.D. Wash. July 25, 2012) (court order) ("a review of the

example, Valenzano has personal knowledge that "the commission rate was changed from 25% of Gross [M]argin to 18% of Gross Margin."[61] She may also have personal knowledge of the amounts paid to Ruhl and Peterson.

But the portions of her declaration requiring expertise for a forensic audit are inadmissible. Valenzano admits she is "not a forensic accountant."[62] She does not qualify as an expert under ER 702. A lay opinion admissible under ER 701 must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702."[63] A witness with "particularized knowledge" by virtue of her position in a business may provide a lay opinion about the business.[64]

Valenzano states that she took over Chenkovich's responsibilities and reviewed "timesheet records, accounting records, and expense data/reports" to conclude ProjectCorps had overpaid Ruhl and Peterson.[65] But ProjectCorps does not establish Valenzano has particularized knowledge of its accounting or business practices.

---

declarations shows that while some do not directly pertain to Zinkova's time as a bookkeeper, they all establish through personal knowledge what the general bookkeeping practices at PIGCO were"); see also State v. Ortiz, 119 Wn.2d 294, 308-09, 831 P.2d 1060 (1992) (tracker's lay opinion testimony permissible based on training and experience as a tracker).

[61] CP at 236, ¶ 7.

[62] CP at 234, ¶ 3.

[63] ER 701.

[64] FED. R. EVID. 701 advisory committee's note to 2000 amendment. ER 701 parallels its federal counterpart, FRE 701. "Where a state rule parallels a federal rule, analysis of the federal rule may be looked to for guidance." Beal v. City of Seattle, 134 Wn.2d 769, 777, 954 P.2d 237 (1998).

[65] CP at 236-39

Neither is there a showing that Valenzano has lay experience analyzing sophisticated, business-accounting practices. On this record, the portions of Valenzano's declaration analyzing the application of the commission program to specific projects are not admissible lay testimony under ER 701.

## Attorney's Fees

On remand, any attorney's fees award for the 2013 salary and the commissions is proper only if ProjectCorps willfully withheld Ruhl's and Peterson's compensation.[66] Attorney's fees depend upon whether a bona fide dispute exists over Ruhl's and Peterson's 2013 salary and whether Ruhl and Peterson knowingly submitted to the withholding of their commissions.

## Prejudgment Interest

ProjectCorps contends the trial court abused its discretion in awarding prejudgment interest from the date of deferment on all of Ruhl's and Peterson's wage claims, including interest on the 2012 salary. But ProjectCorps cites no authority for this proposition in its opening brief. In its reply brief, it merely attempts to distinguish one case cited by Ruhl and Peterson. On this briefing, we decline to address when prejudgment interest began to accrue on unpaid salaries and commissions.[67]

## CONCLUSION

We affirm the unchallenged award of 2012 salary and related double damages. On remand, the trial court shall determine the amount of attorney's fees and

---

[66] RCW 49.52.070.

[67] RAP 10.3(a)(6) (parties must support their arguments with citations to legal authority); Norcon Builders, 161 Wn. App. at 486 ("We will not consider an inadequately briefed argument.").

14

prejudgment interest allocable to the 2012 salary.

We reverse the partial summary judgment order regarding the disputed commissions and the 2013 salary. Genuine issues of material fact remain whether a "bona fide dispute" exists over Ruhl's and Peterson's 2013 salary and whether Ruhl and Peterson "knowingly submitted" to the withholding of their commissions. We remand for further proceedings consistent with this opinion.

WE CONCUR: