FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 15

STATE OF WASHINGTON

BY_____
        DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| KRISTINE FAILLA, | No. 43405-9-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| FIXTUREONE CORPORATION; and KENNETH A. SCHUTZ, | |
| Appellants. | |

BJORGEN, J. — Kenneth A. Schutz, president and chief executive officer of FixtureOne Corporation, appeals the denial of his motion to dismiss Kristine Failla's claims against him for unpaid wages and other relief and the granting of Failla's summary judgment motion on the same claims. Schutz argues that Washington State lacks personal jurisdiction over him because he does not have the requisite minimum contacts with the state; and, even if Washington did have personal jurisdiction, that summary judgment was inappropriate because genuine issues of material fact are present. Concluding that Washington lacks personal jurisdiction, we reverse the superior court's denial of Schutz's dismissal motion. Because Washington lacks jurisdiction, we also reverse the superior court's summary judgment in Failla's favor and the accompanying judgment and awards of prejudgment interest, attorney fees and costs.

FACTS

I. REMOTE EMPLOYMENT WITH PENNSYLVANIA CORPORATION

FixtureOne is a Pennsylvania corporation headquartered in Philadelphia, specializing in the design and production of custom store fixtures and furnishings for the retail industry. Schutz was the president and chief executive officer of FixtureOne Corporation and had been an officer and director of the company between 2004 and 2011.

In October 2009 Failla e-mailed Schutz seeking a sales position with FixtureOne that she could perform from her home near Seattle. Failla traveled to Pennsylvania for an interview with Schutz. Following the interview, Schutz offered Failla an account executive position with the company. The position required Failla to conduct her work via telephone, e-mail, and occasional airplane travel. Schutz told Failla that having a sales representative in her part of the country could be useful because he would like to do business with Starbucks. However, Failla did not pursue Starbucks or any other Washington company as a customer. Failla's compensation included $75,000 in annual salary and an additional three percent sales commission on new accounts.

At the end of 2010, Failla's first full year of employment with FixtureOne, she e-mailed Schutz asking for an accounting of her sales commissions and payment of those commissions. Schutz instructed "Ed"[1] to identify and report Failla's 2010 sales commissions and to issue her a check. Clerk's Papers (CP) at 36.

Schutz promoted Failla to vice president for sales in 2011. He raised her base salary to $135,000 and continued her three percent sales commission, with the exception of one account. Additionally, Schutz informed Failla that she would need to sign the company's employment agreement, which, among other terms, provided that it "shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania." CP at 78. Failla responded that she would sign and mail the agreement that day. Three days later, Failla sent a version of the agreement

---

[1] The e-mail address associated with this person is "Ed Friedman." Clerk's Papers at 36. Otherwise, the record does not identify him. In the "Facts" section of Failla's brief, she refers to this person as "staff." *See* Br. of Resp't at 3.

2

back to Schultz with proposed revisions. Neither Schutz nor Failla took further action on the agreement.

In early April, Failla sent Schutz another request for the accounting and payment of her 2010 commissions. Schutz replied, "If Ed does not calculate soon, I will do so." CP at 38. Shortly thereafter, Schutz calculated Failla's 2010 commissions as $21,025.06. He e-mailed that calculation to Ed with instructions that Ed send a check for that amount to Failla by overnight mail. Not having received payment in early May, Failla again asked Schutz about the situation. Schutz responded that he had instructed Ed to make the payment and that he would find out what happened.

In late May Schutz e-mailed Failla, informing her that FixtureOne could not execute its orders properly and needed to close. Schutz told Failla that the company needed to end her employment as of the next day, but he promised, "We will pay your commissions and expenses asap in the next several weeks as we complete operations." CP at 44.

In early June Failla again e-mailed Schutz, asking for her last payroll salary check, her expenses, her 2010 sales commissions, and for documentation for her 2011 commissions. Schultz responded, "I know that Ed cut a payroll check for you and I signed it—I assume it would have been sent overnight and will check on it. I will check the status of your expenses and calculate the 2011 commissions." CP at 46.

In late July Schutz e-mailed Failla stating, "Legally we do not owe you any commissions as the amount owed was negated when Juicy cancelled $50,000 of JFK . . . would like to pay you a severance in an amount equal to what the commission would have been assuming we are in a

financial position to do so, however right now we are not in a financial position to do so." CP at 50.

Through counsel, Failla sent a letter to Schutz demanding immediate payment. The letter informed Schutz that Washington subjected employers to liability for double damages and attorney fees.

## II. PROCEDURE

Failla filed a complaint in Washington State seeking judgment for double her unpaid wages and for breach of her employment contract. Although Failla originally named both FixtureOne and Schutz, she was unable to obtain service on FixtureOne; therefore, she proceeded solely against Schutz and served him in Pennsylvania.

Failla moved for summary judgment against Schutz, seeking wages, exemplary damages, attorney fees, and costs under RCW 49.52.050 and .070. Schutz moved to dismiss for lack of personal jurisdiction under CR 12(b)(2). The parties agreed that the trial court would consider both motions concurrently.

The trial court denied Schutz's motion to dismiss and granted summary judgment for Failla.[2] The order included $59,608.12 as the principal amount, $3,129.42 for prejudgment interest, $8,150.00 in attorney fees, and $568.40 in costs. Schutz appeals.

---

[2] The record before this court consists of only Clerk's Papers; the record does not contain the Verbatim Report of Proceedings.

4

## ANALYSIS

Schutz argues that the Washington court lacked personal jurisdiction over him under the long-arm statute, RCW 4.28.185, because he lacks minimum contacts with the forum state. Schutz additionally argues that even if Washington has personal jurisdiction, summary judgment was inappropriate because questions of material fact remained. Failla responds that Washington has jurisdiction because Schutz knew that Failla lived and would perform her duties in Washington. Failla also responds that Schutz failed to raise any issue of material fact before the trial court. We hold that the superior court lacked personal jurisdiction over Schutz and, for that reason, we reverse the superior court's denial of Schutz's dismissal motion and its grant of summary judgment in favor of Failla.

### I. STANDARD OF REVIEW

When reviewing a summary judgment order, we engage in the same inquiry as the trial court. We determine if there are any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992). In this review, "'[t]he court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.'" *Lewis*, 119 Wn.2d at 669 (quoting *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)) (alteration in original). More specifically, where the "underlying facts are undisputed, the trial court's assertion of personal jurisdiction is a question of law reviewable de novo." *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991). Failla has the burden of establishing jurisdiction, but she need only make a prima facie showing.

*CTVC of Hawaii Co., Ltd. v. Shinawatra*, 82 Wn. App. 699, 708, 919 P.2d 1243 (1996), *modified by* 932 P.2d 664 (1997).

## II. JURISDICTION

Washington's long-arm statute, RCW 4.28.185, authorizes Washington courts to exercise jurisdiction over a nonresident defendant to the extent permitted by the due process clause of the United States Constitution. *MBM Fisheries, Inc.*, 60 Wn. App. at 423.

Specifically, RCW 4.28.185 provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
    (a) The transaction of any business within this state;
    (b) The commission of a tortious act within this state;

. . . .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this section.

To subject a nonresident defendant to the personal jurisdiction of this state under RCW 4.28.185, the following requirements must be met:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767, 783 P.2d 78 (1989) (quoting *Deutsch v. W. Coast Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311 (1972)).

We will not find jurisdiction under the long-arm statute unless a nexus exists between the plaintiff's cause of action and the defendant's activities in the state. 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 4.13, at 89 (2d ed. 2009). We determine the propriety of long-arm jurisdiction "on a case-by-case basis, based upon the specific parties and the specific facts." 14 WASHINGTON PRACTICE at 90.

A. No Transaction of Business within Washington

To meet the first step in the *Shute* test, set out above, the evidence must show that Schutz purposefully did some act or consummated some transaction in this state. *Shute*, 113 Wn.2d at 767. Personal jurisdiction "exists where the contacts create a substantial connection with the forum state." *SeaHAVN, Ltd. v. Glitnir Bank*, 154 Wn. App. 550, 564, 226 P.3d 141 (2010). We determine the sufficiency of the contacts "by the quality and nature of the defendant's activities, not the number of acts or mechanical standards." *Shinawatra*, 82 Wn. App. at 710.

The execution of a contract with a state resident alone does not fulfill the "'purposeful act'" requirement. *MBM Fisheries*, 60 Wn. App. at 423 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 478-79, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). To determine whether Schutz purposefully established minimum contacts with Washington by hiring Failla, we must examine the entire transaction, including negotiations, "contemplated future consequences, the terms of the contract, and the parties' actual course of dealing." *MBM Fisheries*, 60 Wn. App. at 423.

Failla argues that Schutz consummated a transaction in Washington by employing her knowing that she lived in Washington, citing *Toulouse v. Swanson*, 73 Wn.2d 331, 438 P.2d 578 (1968), *Thornton v. Interstate Sec. Co.*, 35 Wn. App. 19, 21, 666 P.2d 370 (1983), and *Cofinco of*

7

*Seattle, Ltd. v. Weiss*, 25 Wn. App. 195, 605 P.2d 794 (1980). These cases, however, do not support this proposition.

In *Toulouse*, 73 Wn.2d at 331, an Idaho resident employed a Washington lawyer to represent him in Washington in extended litigation involving his mother's estate. Toulouse was in the state of Washington on many occasions from 1956 to 1959 and was a frequent visitor, as a client, to his attorney's law office. *Toulouse*, 73 Wn.2d at 331. The court upheld Washington jurisdiction over Toulouse in a suit by his attorney for compensation, holding that Toulouse consummated a transaction in Washington by employing the plaintiff as his lawyer, that the present action arose from that transaction, and that sustaining Washington jurisdiction would not be "an affront to the 'traditional notions of fair play and substantial justice' necessary for due process of law." *Toulouse*, 73 Wn.2d at 334 (citations omitted).

In *Thornton*, a foreign corporation hired Thornton to expand into Washington and other northwest states. Thornton worked in Washington, with Washington companies, and was chosen for employment

> [b]ecause of his numerous contacts in the industry, his position as vice-president and then president of the Washington State Consumer Finance Association, his dealings since 1956 with Washington State's Division of Banking, Department of General Administration, his knowledge of state laws regulating small loan companies, and his experience in the field since 1946.

*Thornton*, 35 Wn. App. at 21. When Thornton's employment was terminated, he sued the foreign corporation in the Washington courts. We held that Thornton's role and the company's reasons for hiring him raised sufficient contacts with Washington to sustain personal jurisdiction. *Thornton*, 35 Wn. App. at 25.

In *Cofinco*, 25 Wn. App. at 196, a Washington corporation with its principal place of business in Seattle, hired Weiss, a New York resident, to sell shoes for Cofinco on the east coast. Although Weiss never came to Washington, Cofinco provided him with goods, funds, and advancements as part of selling shoes for Cofinco. *Cofinco*, 25 Wn. App. at 196. We held that under these circumstances the long-arm statute gave Washington courts jurisdiction over Weiss in a contract dispute with Confinco. By entering into the employment contract, we held Weiss "purposefully [availed himself] of the privilege of conducting activities" within the state of Washington. *Cofinco*, 25 Wn. App. at 197 (alteration in original) (citation omitted).

None of these cases stand for the rule that Schutz is subject to Washington jurisdiction merely because he hired Failla knowing that she lived in Washington. Instead, each decision rests its holding on contacts that are not present in the relationship between Failla and Schutz or FixtureOne.

Failla reached out to Schutz in Pennsylvania and flew to Pennsylvania to interview. FixtureOne paid Failla by checks initiated, issued, and mailed from Pennsylvania. FixtureOne did not register to do business in Washington and never had operations, officers, or customers in this state. Nothing about Schutz's employment of Failla anticipated that her activities in Washington would consist of more than residing here, working from home, and collecting a paycheck. Nothing in the record shows any attempt to do business with a Washington company, let alone any transactions with Washington companies.

Federal case law strongly indicates that this level of contact is insufficient to sustain jurisdiction over Schutz. In *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985), the court held that use of mails or telephones ordinarily does not qualify as purposeful activity invoking

the benefits and protections of the forum state. *Pennebacker v. Wayfarer Ketch Corp.*, 777 F.Supp. 1217, 1221 (E.D.Pa. 1991), held that the plaintiff's decisions to live in Pennsylvania and receive some paychecks there were unilateral decisions on his part and did not support Pennsylvania jurisdiction over the New York employer. Similarly, *Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255, 261-63 (E.D.Pa. 1994), held that a salesman's unilateral decision to work partly in his home state of Pennsylvania did not establish jurisdiction over his New Jersey employer where the salesman had an office in New Jersey and his employer neither required nor encouraged him to live or work in Pennsylvania.

The business relationship between Schutz and Failla shares its essential characteristics with those relationships found inadequate to sustain jurisdiction in these federal cases. In contrast, the relationship between Schutz and Failla lacks the sort of additional contacts on which *Toulouse, Thornton,* and *Cofinco* relied to uphold jurisdiction. Thus, the case law leans heavily against the conclusion that the superior court had jurisdiction over Schutz.

Failla argues that her presence in Washington was more than simple residence, because Schutz had told her that having a sales representative here could be useful in obtaining business with Starbucks. However, the record merely shows that after Schutz hired Failla, he forwarded an e-mail to her with the subject line "Starbucks," mentioning that another company had certified FixtureOne's fixtures under a food equipment standard. CP at 95. The meaning of this e-mail is obscure. Other than this bare subject line, the record does not show any attempt to do business with Starbucks or any other Washington company. Failla's employment began in November 2009 and ended in May 2011. During that time, there is no evidence of contact with Starbucks. During that time, there are no e-mails discussing attempts to make contacts, no meetings

10

concerning Starbucks, and no mention of phone calls concerning Starbucks. Not only did FixtureOne fail to gain Starbucks or any other Washington company as a customer, there is no evidence that Failla or anyone at FixtureOne ever solicited Starbucks or any other Washington company's business. Without any action, preparations, or planning, a single mention of Starbucks in the subject line of an e-mail is without significance in determining whether Washington courts have jurisdiction over Schutz.

For these reasons, we conclude that Schutz did not transact business in Washington for the purpose of the long-arm statute. In reaching this holding, we do not ignore the potential effect of the recent, revolutionary advances in communications, such as e-mail, video conferencing, social media and the Internet, on the analysis of jurisdiction. If Schutz and FixtureOne had opened a physical branch office here, the case for jurisdiction over them would be much stronger. The availability of e-mail, the Internet and the rest invites consideration whether Failla's situation was effectively no different from a bricks and mortar branch office; whether it was qualitatively different from that of an employee working at home using just mail and the telephone. The case law rejects "'mechanical'" and "'conceptualistic'" approaches to long-arm jurisdiction in favor of a "'highly realistic'" approach that considers actual course of dealing. *See Burger King Corp.*, 471 U.S. 462 at 478-79 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945) and *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S. Ct. 602, 87 L. Ed. 777 (1943)). The factual record in this appeal does not allow proper consideration of the effect of the new electronic world on the "highly realistic" approach to long-arm jurisdiction required by the case law. That question awaits another day.

11

B.    No Commission of Tortious Act within Washington

Failla also argues that Schutz committed a tortious act that established personal jurisdiction in Washington under RCW 4.28.185(1)(b). Specifically, Failla argues that Schutz committed a tort by failing to pay her wages and that he injured her in Washington because that is where she resided and should have been paid. Schutz correctly responds that because his alleged failure to pay did not occur in Washington, that action cannot subject him to its jurisdiction.

Under RCW 4.28.185(1)(b), a tortious act occurs in Washington when the injury occurs within our state. *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 757, 757 P.2d 933 (1988). An injury "occurs" in Washington for purposes of the long-arm statute, "if the last event necessary to make the defendant liable for the alleged tort occurred in Washington." *MBM Fisheries*, 60 Wn. App. at 425. A nonphysical loss suffered in Washington is not sufficient in itself to confer jurisdiction. *Hogan v. Johnson*, 39 Wn. App. 96, 100, 692 P.2d 198 (1984). No jurisdiction exists when alleged fraud had an effect in Washington only because plaintiff had chosen to reside there. *DiBernardo-Wallace v. Gullo*, 34 Wn. App. 362, 366, 661 P.2d 991 (1983).

The *SeaHAVN* decision is also instructive in resolving this issue. SeaHAVN alleged that Glitnir Bank tortiously misrepresented that it had no conflicts of interest and that it would not disclose SeaHAVN's confidential information to benefit a competitor. *SeaHAVN*, 154 Wn. App. at 569. SeaHAVN argued that Washington had jurisdiction because SeaHAVN was a Washington based company and Glitnir had financially harmed SeaHAVN in Washington. *See SeaHAVN*, 154 Wn. App. at 569. Division One of this court concluded, however, that "[b]ecause

12

the alleged misrepresentations did not occur in Washington, . . . Glitnir was not subject to jurisdiction under RCW 4.28.185(1)(b)." *SeaHAVN*, 154 Wn. App. at 570.

Here, Schutz allegedly committed a tort by failing to pay Failla's wages. His failure to pay occurred in Pennsylvania. Failla experienced nonphysical injury in Washington only because she chose to live in Washington. Because the failure to pay is the "last event necessary" to make Schutz liable and his alleged failure did not occur in Washington, he is not subject to Washington jurisdiction. *See MBM Fisheries*, 60 Wn. App. at 425.

Failla does not show that Schutz either transacted business or committed a tort in Washington. Consequently, Failla does not meet the first prong of the three-part *Shute* test, and Washington courts lack personal jurisdiction over Schutz. *See Shute*, 113 Wn.2d at 767. With that conclusion, we need not consider the second or third parts of the *Shute* test.

We reverse the superior court's decision that it had personal jurisdiction over Schutz and its denial of Schutz's dismissal motion. Because the superior court lacked jurisdiction, we reverse its grant of summary judgment in favor of Failla and the accompanying judgment award and award of prejudgment interest, attorney fees, and costs.

_____
BJORGEN, J.

We concur:

_____
HUNT, P.J.

_____
PENOYAR, J.

13