**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 2 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Oct 2, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KRISTINE FAILLA, | ) | |
| | ) | No. 89671-2 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| FIXTUREONE CORPORATION; and | ) | |
| KENNETH A. SCHUTZ, | ) | |
| | ) | |
| Respondents. | ) | Filed ___OCT 0 2 2014___ |
| | ) | |

YU, J.—This case asks whether Washington's long-arm statute, RCW 4.28.185, confers personal jurisdiction over an officer of a foreign corporation that employs a Washington resident. On the facts before us, we conclude it does for wage claims arising from that employment relationship and reverse the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

In 2009, Kristine Failla, a Washington resident and experienced salesperson, was looking for a job she could perform from her Gig Harbor home. She e-mailed Kenneth A. Schutz looking for such a position. Schutz is the founder and chief executive officer (CEO) of FixtureOne Corporation, which sells fixtures,

casework, and displays for use in retail stores. Clerk's Papers (CP) at 62. Both FixtureOne and Schutz are based in Pennsylvania, and at the time of Failla's e-mail, FixtureOne had no physical presence or customers in Washington.

Failla's inquiry caught the interest of Schutz, who replied to Failla that she "may be a fit" for FixtureOne because the company did "not have a sales representative in [this] area of the country." CP at 93. The parties continued negotiating, and Schutz eventually invited Failla to interview with FixtureOne in Pennsylvania knowing she lived and planned to work in Washington. Schutz admits the nature of FixtureOne's business allows sales representatives to work anywhere with Internet and telephone access. CP at 63.

FixtureOne hired Failla as an account executive in November 2009 and agreed to pay her an annual salary of $75,000, plus an additional three percent commission on sales. Failla's job responsibilities included, among other duties, "leading the company" in "[p]lanning, execution and management of profitable growth and expansion of the company's revenue base and market share." CP at 30. The job also involved the "[d]esign, implementation and management of business development, client acquisition, and sales strategies." *Id*. Failla reported directly to Schutz, and the two communicated extensively by e-mail.

In December 2010, Failla requested a promotion and a raise. Schutz agreed and promoted her to FixtureOne's vice president of sales, increasing her salary to

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

$135,000. Although there were outstanding commissions owed, Failla accepted the promotion and salary increase based on the assurances that the commissions would be paid. CP at 36. Schutz provided a draft employment agreement for Failla to sign in connection with the promotion. Among other things, the agreement contained a provision that it would be interpreted in accordance with Pennsylvania law. Failla proposed revisions to the agreement, but for reasons unknown neither Failla nor Schutz ever signed it.

Failla continued working for FixtureOne from her Washington home until May 2011. She received regular paychecks, and the only issue in this case is the sales commissions owed to her that were not paid. On May 26, 2011, Schutz e-mailed Failla to tell her that FixtureOne was "clos[ing] its doors" and ending her employment the following day. CP at 44. He assured Failla that FixtureOne would "pay your commissions and expenses asap in the next several weeks." *Id.* For two months following her termination, Schutz returned Failla's requests for payment with various explanations as to why the commissions remained unpaid. At one point he told Failla that he signed her commission check and blamed another employee for not mailing it. At other times he faulted the company's comptroller for failing to calculate the commission amount. Schutz eventually advised Failla that she would not receive a commission check and for the first time disputed whether such commissions were even owed. CP at 50.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Failla filed suit against FixtureOne and Schutz for the wilfull withholding of wages, including an allegation that Schutz was individually liable under Washington's wage laws, RCW 49.52.050 and .070. Failla served Schutz in Pennsylvania but was unable to serve FixtureOne. Consequently the suit proceeded against Schutz alone.

Failla and Schutz cross moved for summary judgment.[1] Schutz argued that the trial court lacked personal jurisdiction because he did not have the requisite minimum contacts with the state, and even if Washington could exercise jurisdiction over him, there were genuine issues of material fact preventing the entry of summary judgment. The trial court concluded it had personal jurisdiction and denied Schutz's summary judgment motion. Instead, the court granted summary judgment to Failla, awarding double damages pursuant to RCW 49.52.070, which provides for such damages when an employer wilfully withholds wages due an employee.

The Court of Appeals reversed, holding that Washington's long-arm statute did not reach Schutz because the employment relationship between Failla and FixtureOne was inadequate to confer jurisdiction over Schutz. *Failla v. FixtureOne*

---

[1]Schutz styled his motion as one to dismiss, but because he relied on materials outside the complaint, the superior court properly treated the motion as one for summary judgment. CR 12(b), 56.

4

*Corp.*, 177 Wn. App. 813, 312 P.3d 1005 (2013). We granted review. *Failla v. FixtureOne Corp*, 180 Wn.2d 1007, 321 P.3d 1207 (2014).

Both parties agree FixtureOne, not Schutz, was the employer entity that hired Failla and that Failla performed work for FixtureOne in Washington. The disputed issue is whether Schutz, as the president and CEO of FixtureOne, is subject to Washington's jurisdiction and, if so, whether the trial court erred in finding he is liable under Washington's wage statute for nonpayment of wages under RCW 49.52.050 and .070. We hold that Schutz is subject to Washington's jurisdiction based on his level of contacts and transactions in Washington, regardless of whether he ever personally set foot in the state, and that the record supports the trial court's finding of liability.

ANALYSIS

I. Standard of Review

We review the grant of summary judgment de novo and engage in the same inquiry as the trial court, determining whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992). "In so doing, '[t]he court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

could reach but one conclusion.'" *Id.* (alteration in original) (quoting *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)).

Similarly, a trial court's assertion of personal jurisdiction is a question of law that we review de novo, where, as here, the jurisdictionally relevant facts are undisputed. *Id.*

## II. Personal Jurisdiction

Washington courts are authorized to assert personal jurisdiction over nonresident defendants to the extent permitted by the federal due process clause. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989). States can exercise jurisdiction without violating due process if the nonresident defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (citing the Court's canonical opinion *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The central concern of the federal constitutional inquiry is the relationship between the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

Our long-arm statute, designed to be coextensive with federal due process, subjects nonresident defendants to personal jurisdiction of Washington courts for

*Failla v. FixtureOne Corp., et al.*, No. 89671-2

any cause of action that arises from the transaction of any business within the state, among other conduct. RCW 4.28.185(1)(a). Three factors must coincide for the long-arm statute to apply:

> "(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice, considering the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of state laws afforded the respective parties, and the basic equities of the situation."

*Shute*, 113 Wn.2d at 767 (quoting *Deutsch v. W. Coast Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311 (1972)). This inquiry encompasses both the statutory and due process concerns of exercising personal jurisdiction. *FutureSelect Portfolio Mgmt., Inc. v Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 964, 331 P.3d 29 (2014).

Schutz argues he is not subject to Washington's jurisdiction because he has never been to Washington and because he acted only as an employee and officer of the corporation that employed Failla. He asserts that jurisdiction and liability, if any, rests exclusively with the employing corporation.

We agree that a corporation's actions cannot be simply imputed to a corporate officer or employee for purposes of determining whether there are minimum contacts necessary to establish jurisdiction. But it is just as true that an officer or employee is not automatically shielded from personal jurisdiction just because his contacts occurred in the context of his employment. *Calder v. Jones,*

7

*Failla v. FixtureOne Corp., et al.*, No. 89671-2

465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Instead, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.*; *see also Davis v. Metro Prods. Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) (affirming states' authority to assert personal jurisdiction over corporate officers based on contacts performed in that capacity). We determine personal jurisdiction on a case-by-case basis.

Schutz is the founder and CEO of FixtureOne. He was the individual who responded to Failla's job inquiry, interviewed her, and hired her because of the potential benefits to FixtureOne of having a sales representative in Washington. During the two-year course of her employment, Schutz set her salary, issued her payroll checks, promoted her, gave her a raise, and calculated her commissions. He appeared to be the primary contact for Failla, and in fact, there is no evidence in the record that Failla had contact with anyone other than Schutz. Failla was FixtureOne's employee located in the State of Washington who, while working in this state, generated over $700,000 in revenue for the company in 2010. CP at 40.

The Court of Appeals held that Washington could not exert jurisdiction over Schutz because

> FixtureOne did not register to do business in Washington and never
> had operations, officers, or customers in this state. Nothing about
> Schutz's employment of Failla anticipated that her activities in
> Washington would consist of more than residing here, working from
> home, and collecting a paycheck. Nothing in the record shows any

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

attempt to do business with a Washington company, let alone any transactions with Washington companies.

*Failla*, 177 Wn. App. at 823-24. The Court of Appeals' analysis relies upon a finding that a person or company must target potential *consumers* in Washington, a subset of all this state's residents, to have transacted business here and to come within reach of the long-arm statute. But we have interpreted RCW 4.28.185(1)(a) more broadly.

For example, in *Toulouse v. Swanson*, 73 Wn.2d 331, 334, 438 P.2d 578 (1968), we held that it was "beyond dispute" that an Idaho resident transacted business in this state under the long-arm statute when he employed a Washington lawyer. We found it particularly relevant that the parties' contract "'called for services over an extended period of time,'" giving the nonresident defendant an ongoing connection to this state. *Id.* at 331 (quoting trial court order). Likewise, in *Thornton v. Interstate Securities Co.*, 35 Wn. App. 19, 23-25, 666 P.2d 370 (1983), the Court of Appeals determined that Washington could assert personal jurisdiction over a Kansas successor corporation on the basis that it consummated a transaction when it employed a Washington resident. "It has availed itself, however, of the knowledge and services of [the Washington employee] to collect accounts receivable here. It has thus carried on activity which touched the matter in issue— use of [the employee's] services under the employment contract." *Id.* at 25.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Similarly, in *Cofinco of Seattle, Ltd. v. Weiss*, 25 Wn. App. 195, 196, 605 P.2d 794 (1980), the Court of Appeals exercised jurisdiction over a nonresident defendant who agreed to work for a Washington corporation selling shoes on the East Coast. Jurisdiction was proper despite the fact that the defendant, who lived and worked in New York, had never been to Washington, never owned real property situated in Washington, and "never engaged in any activities, business or otherwise, in the state." *Id.* The court correctly held that Washington courts had the jurisdictional power to adjudicate the employment dispute and that by entering into the employment contract, the employee purposefully availed himself of the privilege of conducting activities within the state of Washington. *Id.* at 197.

Logically, if a nonresident employee defendant in New York is afforded the protection of Washington's laws governing the employer-employee relationship, at the very least a Washington resident should also be afforded the statutory protection of Washington's wage laws. A Pennsylvania employer that employs a Washington resident, and through that employee, conducts business from Washington for over two years forms a sufficient connection to the state such that it should reasonably anticipate defending a wage dispute here.[2]

---

[2] A relevant inquiry in this case is whether Schutz could "'reasonably anticipate being haled into court'" in Washington. *Calder*, 465 U.S. at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or 'the unilateral activity of another party or a third person.'" *Burger King*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Thus, we hold that employing a Washington resident to perform work in Washington constitutes the "transaction of any business within this state" under RCW 4.28.185(1)(a) and satisfies the first *Shute* prong. Jurisdiction is proper in Washington for wage claims arising from that employment, and employees may seek redress in this state's courts absent an enforceable contract selecting an alternative forum and assuming fair play and substantial justice are not offended.

This analysis is a practical application of the principles delineated in *Toulouse*, *Thornton*, and *Cofinco* and conforms the long-arm statute to the

---

*Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)); *World-Wide Volkswagen*, 444 U.S. at 229; *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

The dissent agrees the "contact" in question here is Schutz's correspondence with and decision to hire Failla. But it fails to evaluate the extent of contact and subsequent contacts under the proper precedent. Instead, the dissent concludes Washington lacks minimum contacts because Failla "did not solicit any business in Washington, and there is no record that [FixtureOne] made any sales or did any advertising in Washington." Dissent at 3. The dissent does not explain why Schutz would have been better able to foresee Failla's lawsuit for unpaid wages if FixtureOne had solicited more business in Washington.

Moreover, the dissent relies principally on *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), a case easily distinguishable. *Walden* involved a federal agent who stopped a couple at an airport in Georgia, seized from them $97,000 in cash, and allegedly filed a false and misleading affidavit in support of forfeiture. *Id.* at 1120-21. The couple, who had residences in California and Nevada, sued in Nevada. *Id.* at 1121. The United States Supreme Court unanimously held the Nevada court lacked personal jurisdiction over the agent, who "never traveled to, conducted activities within, *contacted anyone in, or sent anything or anyone to Nevada.*" *Id.* at 1124 (emphasis added). The plaintiffs' residence in Nevada was, from the point of view of the defendant, random and fortuitous.

Schutz's connection to Washington was not random and fortuitous. It was the product of deliberate negotiation with Failla over the terms of her employment and salary and apparently stemmed in part from his decision that FixtureOne needed a sales representative in that part of the country. For this reason, *Walden* is inapposite.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"phenomena of [the] modern economy." *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 684, 430 P.2d 600 (1967) (interpreting RCW 4.28.185 consistently with contemporary business practices). We recognize many employers no longer do business in physical buildings or rely upon hands-on or face-to-face presence for there to be actual presence in a geographical location.

In this case, as outlined above, Schutz is not just *any* corporate officer, and we do not hold today that any corporate officer of a nonresident corporation may be subject to the state's jurisdiction. Rather, Schutz was the officer directly responsible for the hiring, firing, promotion, and payment of Failla's wages. Schutz's contacts with the state of Washington were sufficient to confer jurisdiction over him for wage disputes arising from those contacts.

Likewise, it does not offend fair play or substantial justice to require Schutz to defend Failla's wage claim here. It is not unreasonable to require a company that knowingly employs a Washington resident to abide by this state's wage laws, nor is it unreasonable to require the individual responsible for payroll to answer for failing to comply with those laws. Schutz knew from the outset that he was hiring an employee in Washington and, as Failla's primary contact at FixtureOne, was ultimately responsible for paying her. Employers have fair notice of our laws governing the employer-employee relationship, including RCW 49.52.050 and .070, which impose individual liability. We cannot say under the facts of this case

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that exercising jurisdiction violates due process. This satisfies the third *Shute*

prong,[3] and the trial court was correct to exercise personal jurisdiction over Schutz.

### III. Summary Judgment

The trial court entered judgment in favor of Failla under RCW 49.52.050

and .070. Together these statutes create a cause of action against

> [a]ny employer *or officer, vice principal or agent of any employer . . .*
> who . . .
> [w]ilfully and with intent to deprive the employee of any part of
> his or her wages, [pays] any employee a lower wage than the wage
> such employer is obligated to pay such employee by any statute,
> ordinance, or contract.

RCW 49.52.050(2) (emphasis added). The critical, but not stringent, prerequisite to

liability is that the employer's (or officer's) failure to pay wages was "wilfull."

*Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159-60, 961 P.2d 371 (1998).

The employee need show only that the refusal to pay was a volitional act, not the

product of mere carelessness and not the result of a bona fide dispute. *Id.* at 160.

Usually wilfullness is a question of fact, but as with all fact questions, summary

judgment is proper as a matter of law if the evidence supports a single reasonable

conclusion. *Id.*

---

[3] The second *Shute* prong is not at issue. Neither party contests that Failla's claim arises from Schutz's contacts with Washington (the non-payment of wages due under the employment relationship).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We affirm the trial court's judgment. The evidence that Schutz offered the trial court—e-mails in which he faults other employees under his direction for not calculating and paying the commissions to Failla—does not create a genuine issue of fact regarding wilfullness such that it requires a trial on the issue. RCW 49.52.050 and .070 express the legislature's "strong policy in favor of ensuring the payment of the full amount of wages earned." *Morgan v. Kingen*, 166 Wn.2d 526, 538, 210 P.3d 995 (2009). Corporations act only through individuals, and by extending personal liability to individual officers for wages owed by the corporation, the legislature recognized that "officers control the choices over how the corporation's money is used." *Id.* at 537. Thus, officers, vice principals, and agents act wilfully if those individuals exercise control over the employer's funds and still fail to pay their employees. *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 522-23, 22 P.3d 795 (2001) (rejecting liability based on mere agency). We affirmed summary judgment for the employees in *Morgan* based on the employing CEO's ultimate control of the business's finances, which included the authority to hire employees and set compensation. 166 Wn.2d at 531.

Schutz's evidence creates a factual dispute only if we accept as reasonable his suggestion that he lacked power over FixtureOne's assets. The e-mails on which Schutz relies to negate wilfullness, all of which he sent after he terminated Failla, conflict with Schutz's obvious control of the company during Failla's

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

employment. He interviewed her. He hired her. He unilaterally promoted her and directed the company's comptroller to increase her salary. Schutz even admitted his fiscal authority in an e-mail to Failla. CP at 50 ("I know [the comptroller] cut a payroll check for you and I signed it."). The trial court found it possible to draw only one conclusion from this evidence—that Schutz controlled FixtureOne's finances, had the ability to pay Failla, and failed to do so wilfully. We agree.

Nor do we find persuasive Schutz's argument that a bona fide dispute exists regarding the amount of commissions owed to Failla. *See Schilling*, 136 Wn.2d at 160 (recognizing a bona fide dispute over wages negates wilfullness under RCW 49.52.050 and .070). Schutz offered the trial court no evidence refuting Failla's accounting and instead relies upon bare allegations in his summary judgment response. Unsupported allegations do not create a question of fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

CONCLUSION

For the above stated reasons, we reverse the Court of Appeals and reinstate the judgment of the trial court.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Failla v. FixtureOne Corp., et al.*, No. 89671-2

_____
                                          _Jm., J._

WE CONCUR:

_____
Madsen, C.J.

_____
Wiggins, J.

_____
C. Johnson, J.

_____
González, J.

_____
Fairhurst, J.

_____
Gordon McCloud, J.

_____
Stephens, J.

_____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Failla v. FixtureOne Corp.*

No. 89671-2

OWENS, J. (dissenting) — The constitutional right to due process prohibits courts from asserting personal jurisdiction over a defendant unless he or she has certain "minimum contacts" with the forum. U.S. CONST. amend. XIV, § 1; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Importantly, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, ___ U.S. ____, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014). In this case, the out-of-state employer had no contacts with Washington other than hiring the plaintiff, who chose to reside here. Yet, the majority holds that Washington courts have jurisdiction over the employer in his personal capacity. Because this is contrary to the United States Supreme Court's rule that "it is the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defendant, not the plaintiff or third parties, who must create contacts with the forum State," *id.* at 1126, I respectfully dissent.

## ANALYSIS

A state's authority to assert jurisdiction over a nonresident defendant is limited by the due process clause of the Fourteenth Amendment. *World-Wide Volkswagen*, 444 U.S. at 291. A nonresident defendant is subject to personal jurisdiction only when he or she has had "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). The United States Supreme Court has reiterated that "the 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff." *Walden*, 134 S. Ct. at 1125 n.9 (citing *World-Wide Volkswagen*, 444 U.S. at 291-92).

In evaluating whether a defendant had such "minimum contacts," courts look to the relationship between the defendant and the forum. *Id.* at 1121. The United States Supreme Court recently pointed out two key aspects of this relationship in a personal jurisdiction case: first, whether the relationship arose "out of contacts that the 'defendant *himself*' create[d] with the forum State," and second, whether the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defendant had contacts with the forum state itself, not just contacts with persons who reside there. *Id.* at 1122.

In this case, the only contact that the defendant had with this state was his contact with the plaintiff, who chose to reside here. The plaintiff was the one who initiated the relationship by contacting the defendant in Pennsylvania, seeking employment. She then flew to Pennsylvania to interview for the position. The plaintiff then conducted all of her work via phone, e-mail, and occasional travel. She did not solicit any business in Washington, and there is no record that the business made any sales or did any advertising in Washington. Even the payroll checks signed by the employer were signed in Pennsylvania. In sum, the defendant did not initiate any contact with Washington nor did he conduct any business in Washington. The only contact the defendant had with Washington came from the plaintiff.

The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff* (or third parties) and the forum State." *Id.* (emphasis added). In fact, no matter how "significant the plaintiff's contacts with the forum may be," they cannot be decisive when determining whether the defendant had minimum contacts. *Id.* As described above, the employer's only contacts with Washington were his contacts with the plaintiff. He took no actions related to this state. The majority's inquiry is focused on the defendant's contact with the plaintiff, but none of those contacts

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

related to Washington. Since the plaintiff has not demonstrated minimum contacts between the defendant and the state, there is not a sufficient basis for personal jurisdiction.

Furthermore, the decision of the plaintiff to reside in Washington was hers alone. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). If the plaintiff had chosen to move to another state, there is no indication that the move would have had any effect on the defendant, his actions, or his business. The defendant had no contact with the state other than the plaintiff's unilateral choice to reside here. This is insufficient to confer personal jurisdiction over the defendant.

The Court of Appeals properly noted that "[n]othing about [the defendant's] employment of [the plaintiff] anticipated that her activities in Washington would consist of more than residing here, working from home, and collecting a paycheck." *Failla v. FixtureOne Corp.*, 177 Wn. App. 813, 823, 312 P.3d 1005 (2013), *review granted*, 180 Wn.2d 1007, 321 P.3d 1207 (2014). The Court of Appeals correctly concluded that the defendant did not have minimum contacts with the state and thus the state's courts lacked personal jurisdiction. *Id.* at 827. I would affirm.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Failla v. FixtureOne Corp.*
89671-2
Owens, J., Dissenting

## CONCLUSION

As the United States Supreme Court has explained, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122. Here, the plaintiff is the only link between the defendant and Washington. Following the rules laid out by the United States Supreme Court, I do not see how the state courts have personal jurisdiction in this case.

I respectfully dissent.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Failla v. FixtureOne Corp.*
89671-2
Owens, J., Dissenting

Owens, J.

6