# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| THE LAW FIRM OF KALLIS & ASSOCIATES, P.C. and THE LAW OFFICE OF BUSTAMANTE & GAGLIASSO, P.C., | ) ) ) ) ) | No. 76542-6-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| JOSEPH P. PADGETT, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: August 13, 2018 |

VERELLEN, J. — Joseph Padgett, a King County resident and party to a California lawsuit, argues that the King County Superior Court could not compel him to attend his local deposition or award sanctions for his failure to attend. But the Washington Uniform Interstate Depositions and Discovery Act, ch. 51.51 RCW (UIDDA), allows the superior court to issue a subpoena to compel a Washington resident's deposition in a foreign lawsuit. We affirm the trial court's order compelling Padgett's attendance at his deposition and awarding sanctions against him. Additionally, because this appeal is frivolous, we award the respondents reasonable attorney fees in an amount to be determined by the superior court on remand.

## FACTS

The Law Firm of Kallis & Associates P.C. and Bustamante & Gagliasso P.C. (the law firms) sued Padgett for unpaid attorney fees in Santa Clara County, California.[1] Hugo Torbet represented Padgett in that lawsuit.

On September 12, 2016, consistent with the UIDDA, the law firms submitted a deposition subpoena to King County Superior Court. The clerk of the court signed the subpoena, and it was served upon Padgett at his residence in Fall City, Washington on September 21, 2016. The subpoena gave Padgett notice that he was commanded to appear at a deposition in Seattle on October 13, 2016.

On October 5, 2016, Torbet e-mailed Steven Berki, an attorney for Bustamante & Gagliasso P.C., stating that the notice of the deposition was defective because it was not served upon him. Torbet also indicated he could not attend on the date scheduled and asked Berki for alternative dates. Torbet later declared that he and Padgett would not "appear for the defectively noticed deposition."[2] Neither Torbet nor Padgett sought a protective order or an order to quash or modify the subpoena in the Washington or California courts.

Complying with Torbet's request that he be served and hoping to find a date that would work for all parties, Berki then sent Torbet a notice of deposition for October 20, 2016 in Seattle. Torbet responded that the date of the deposition was

---

[1] At oral argument, Padgett informed this court that the Santa Clara County lawsuit was dismissed in June 2018.

[2] Clerk's Papers (CP) at 69.

2

"basically okay"[3] but insisted Berki comply with the UIDDA and serve Padgett with a "local" subpoena because the notice of deposition by itself was insufficient.[4] Berki objected to this request and informed Torbet that the deposition would occur as originally scheduled for October 13. Again, neither Torbet nor Padgett sought a protective order or an order to quash or modify the subpoena or notice in Washington or California.

On October 13, 2016, Jeffrey Kallis of The Law Firm of Kallis & Associates, P.C., appeared at the deposition. Padgett and Torbet did not attend. On October 20, 2016, Berki attended the deposition for Padgett. Again, neither Torbet nor Padgett appeared.

On December 5, 2016, Kallis and Berki sent Padgett and Torbet another deposition notice that compelled Padgett's attendance at a deposition on December 27, 2016, apparently in response to Torbet's request that it would be easier for him to attend at the beginning of the week between Christmas and New Year's Day. Neither Padgett nor Torbet responded to Kallis's numerous attempts to confirm Padgett's attendance. On December 19, in an attempt to meet and confer, Kallis asked Torbet to confirm Padgett's attendance. Torbet sent several unresponsive emails that evaded the issue of attendance.

On December 26, Kallis advised Torbet that he had cancelled the deposition. Torbet threatened that the law firms would waive their right to depose

---

[3] CP at 70.

[4] Torbet referred to the UIDDA as the "uniform discovery compact, or whatever it is called." CP at 73.

Padgett if they did not attend the deposition as scheduled. Because the original location was not available, the law firms scrambled to secure a new time and location for a December 27 deposition. The law firms sent numerous e-mails to Torbet about the new time and location. Torbet and Padgett arrived at the original deposition location but refused to accept any information regarding the new location and time of the deposition. Kallis and Berki appeared at the deposition at the new location, a 10-minute walk from the prior location. Neither Padgett nor Torbet attended. Two days later, Torbet sent Kallis and Berki a letter demanding $4,000 for their failure to appear at the December 27 deposition.

On January 4, 2017, the law firms served Padgett with another subpoena for a deposition on January 13, 2017. Torbet was again unresponsive. After further unsuccessful attempts to meet and confer, the law firms suspended the deposition and filed a motion to show cause to compel Padgett to attend his deposition, and for sanctions.

The trial court granted the motion and awarded sanctions to the law firms. Padgett filed a pro se motion for reconsideration and for sanctions. The motion was denied. Padgett appeals.

## ANALYSIS

### Personal Jurisdiction and the UIDDA

Padgett argues that the trial court could not compel his deposition or award sanctions against him because it did not have personal jurisdiction over him. Because Padgett was personally served with a subpoena in compliance with the

UIDDA and waived any personal jurisdiction defense by failing to seek relief from the court, we disagree.

A trial court's assertion of personal jurisdiction is a question of law that we review de novo.[5] A defense of lack of personal jurisdiction is waived if not timely asserted.[6]

Washington adopted the UIDDA to govern the process and procedures to compel a deponent residing in Washington to attend a deposition for an out-of-state case.[7] A party to the out-of-state lawsuit must request issuance of a subpoena under the UIDDA by submitting "a foreign subpoena to a clerk of the court in the county in which discovery is sought" and the clerk "shall promptly issue a subpoena for service upon the person to which the foreign subpoena is directed."[8] Once a subpoena is issued, Washington has personal jurisdiction over the deponent, and any subsequent application to the court for a protective order or to quash or modify a subpoena must comply with Washington's rules and statutes.[9]

Here, as soon as the law firms served Padgett with the subpoena issued by the King County Superior Court Clerk, the court obtained personal jurisdiction over him. Additionally, Padgett did not move any court in Washington or California for a

---

[5] Failla v. FixtureOne Corp., 181 Wn.2d 642, 649, 336 P.3d 1112 (2014).

[6] CR 12(h)(1).

[7] Ch. 5.51 RCW.

[8] RCW 5.51.020(1)-(2).

[9] RCW 5.51.050. "Superior court civil rules (CR) 26 through 37 apply to subpoenas issued under RCW 5.51.020." RCW 5.51.040.

protective order or an order to quash or modify the subpoena under CR 26(c). Therefore, he waived any argument that the superior court lacked personal jurisdiction.

To the extent that Padgett suggests that the UIDDA limits the subject matter jurisdiction of the superior court, he is mistaken. Superior courts obtain their broad subject matter jurisdiction from the Washington State Constitution, not from any statutory authority.[10] Therefore, we look to the Constitution, not the statute, to determine whether the trial court has subject matter jurisdiction over this type of controversy. A matter filed under the UIDDA is squarely within the broad subject matter jurisdiction of the Washington courts.

Despite Torbet's previous insistence that the law firms serve Padgett with a subpoena in compliance with the UIDDA, Padgett now argues that the UIDDA is only applicable to nonparties and cannot be used to issue a subpoena against a party. Nothing in the plain language of the UIDDA or the California Code of Civil Procedure states that a party can never be compelled to attend a deposition through issuance of a subpoena.[11] And, at oral argument, Padgett acknowledged

---

[10] See Ralph v. State Dep't of Nat. Res., 182 Wn.2d 242, 252, 343 P.3d 342 (2014) (article IV, section 6 gives the superior courts "universal original jurisdiction") (quoting Moore v. Perrot, 2 Wash. 1, 4, 25 P. 906 (1891)).

[11] The California Code of Civil Procedure allows "[a]ny party [to] obtain discovery by taking an oral deposition . . . in another state of the United States." CCP § 2026.010(a). The requirements for doing so vary depending on whether the deponent is a party or nonparty to the lawsuit. If the deponent is a party, "the service of a deposition notice is *effective* to compel that deponent to attend and to testify." CCP § 2026.010(b) (emphasis added). If the deponent is a nonparty, "a party serving a deposition notice . . . *shall* use any process and procedures

that the court can issue a subpoena to a party in California.[12] But more importantly, he waived any concern with the adequacy of the Washington UIDDA subpoena because he did not seek a protective order or move to quash the subpoena in California or Washington. Padgett cannot assert inconsistent requirements for the process necessary to compel his attendance at his deposition and, even when those requirements are met, simply refuse to attend without pursuing relief from the superior court.

In conclusion, King County Superior Court had personal jurisdiction, subject matter jurisdiction, and authority under the UIDDA to issue a subpoena for Padgett's deposition and to award sanctions for his failure to attend.

### Findings of Fact

Padgett argues that the trial court's findings of fact that he "repeatedly failed to appear for a deposition" and that his claims of procedural defects were "unfounded" are not supported by substantial evidence.[13] We disagree.

---

required and available under the laws of the state . . . where the deposition is to be taken." CCP § 2026.010(c) (emphasis added).

[12] CCP § 1985(a) provides, "The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness." Nothing in this language limits a subpoena's use to nonparties. Furthermore, CCP § 1985(c) states that "[a]n attorney at law who is the attorney of record in an action or proceeding, may sign and issue a subpoena to require attendance before the court in which the action or proceeding is pending or at the trial of an issue therein, or upon the taking of a deposition in an action or proceeding pending therein." Again, nothing in the statute limits the use of a subpoena to nonparties.

[13] CP at 373-74.

We review findings of fact to determine whether they are supported by substantial evidence.[14] Substantial evidence exists when there is evidence sufficient to persuade a rational, fair-minded person that the finding is true.[15] Unchallenged findings of fact are verities on appeal.[16] "[T]he appellant has the burden of showing that a finding of fact is not supported by substantial evidence."[17]

Here, in its order granting motion compelling attendance at deposition and for sanctions, the trial court included the following findings of fact:

> (1) Defendant Joseph P. Padgett is a party to a lawsuit brought by Plaintiffs in Santa Clara Superior Court; (2) Padgett is now represented by counsel, Hugo Torbet, in that lawsuit; (3) Mr. Torbet claimed that the initial notice of deposition served on Padgett was defective but agreed to produce Padgett for a deposition; (4) Plaintiff sought to cure the defect by serving Mr. Torbet with a revised notice of deposition; (5) Padgett and Mr. Torbet have taken inconsistent positions regarding what process was necessary to compel Padgett's attendance at a deposition; (6) Padgett and his counsel have repeatedly failed to appear for a deposition, making unfounded claims of procedural defects in the issuance of a deposition subpoena or the service of a deposition notice; and (7) Padgett's actions have led Plaintiff to incur needless legal fees.
>
> The Court further finds that Defendant was properly notified of his depositions as required by Washington Rules of Civil Procedure and per the Uniform Interstate Discovery and Deposition Act.[18]

---

[14] Hegwine v. Longview Fibre Co., 132 Wn. App. 546, 555, 132 P.3d 789 (2006).

[15] Id. at 555-56.

[16] Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

[17] Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015).

[18] CP at 373-74.

Padgett assigns error only to finding (6), that he repeatedly failed to appear for a deposition and that he made unfounded claims of procedural defects.[19] All other findings are verities on appeal.[20] Those include the facts that Torbet agreed to produce Padgett for a deposition, and that he made inconsistent claims of the process required to compel Padgett's attendance.

There is substantial evidence in the record that Padgett did not attend the depositions on October 13 or 20, and that on December 27, he appeared at the prior location set for the deposition but refused to appear at the updated location a 10-minute walk away. Furthermore, Padgett elected to disregard the subpoenas and deposition notices without seeking relief from the court through a protective order or a motion to quash under CR 26(c). Therefore, the trial court's finding that he repeatedly failed to appear for a deposition and that his claims of procedural defects were unfounded was supported by substantial evidence.

The trial court was well within its discretion to award sanctions to the law firms for Padgett's failure to appear at his deposition, and it did not abuse its discretion by denying his motion for reconsideration. His failure to attend, combined with his inconsistent positions as to the process required to compel his attendance, his choice to ignore the change of location for the December deposition, and his refusal to meet and confer to schedule the deposition all speak

---

[19] A party is required to make "[a] separate assignment of error for each finding of fact [the] party contends was improperly made . . . with reference to the finding by number." RAP 10.3(8)(g).

[20] See Robel, 148 Wn.2d at 42 (unchallenged findings are verities on appeal).

to a level of gamesmanship that is inconsistent with the duty to cooperate in discovery matters.[21] The trial court ordered Padgett to pay "reasonable attorney fees and costs associated" with the motion to compel, but the amount of sanctions has not yet been determined. For this reason, we remand for a determination of those reasonable fees and costs.

### Padgett's Request for Discovery Sanctions and Attorney Fees

Padgett argues that, both at the trial court and on appeal, he is entitled to sanctions and attorney fees under CR 37(a)(4). Sanctions under this rule are only allowed to a deponent who successfully defends against a motion to compel.[22] Because Padgett did not successfully defend against the law firms' motion to compel, he is not entitled to attorney fees on appeal. The trial court did not abuse its discretion in declining to award him sanctions below.

### The Law Firms' Request for Attorney Fees on Appeal

The law firms request attorney fees because this appeal is frivolous. RAP 18.9(a) permits this court to award attorney fees when the appellant files a frivolous appeal.[23] "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which

---

[21] See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 342, 858 P.2d 1054 (1993) (recognizing "[t]he concept that a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials.").

[22] CR 37(a)(4) states: "*If the motion is denied*, the court shall . . . require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney fees." (Emphasis added.)

[23] Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004).

reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."[24] Here, Padgett's appeal raises no debatable issues upon which reasonable minds might differ and is devoid of merit. Because Padgett's appeal is frivolous, we award the law firms their reasonable attorney fees on appeal. We direct the trial court to determine on remand the amount of reasonable fees on appeal.[25]

We affirm and remand for a determination of the amount of reasonable attorney fees and costs, including fees on appeal, to be awarded to the law firms.

WE CONCUR:

_____

_____
Becker, J.

_____

---

[24] Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

[25] See RAP 18.1(i) ("The appellate court may direct that the amount of fees and expenses be determined by the trial court after remand.").